AO 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

# United States District Court

| | |
|---|---|
| **District** | SOUTHERN DISTRICT OF ALABAMA |

| Name of Movant | Prisoner No. 08744-003 | Case No. 1:10-cr-00179-001-CG |
|---|---|---|
| Jose Luis Rivera Garcia | | |

**Place of Confinement**

FCI PETERSBURG LOW ) P. O. Box 1000    Petersburg, VA 23804-0000

UNITED STATES OF AMERICA          V.          Jose Luis Rivera Garcia
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack **UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA DIVISION**

2. Date of judgment of conviction __December 22, 2011__

3. Length of sentence __EIGHTY (80) MONTHS__

4. Nature of offense involved (all counts) __Conspiracy to Possess with intent to distribute__
__cocaine 21 U.S.C. § 846__

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☑
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   __pleaded guilty to count (1) Conspiracy to Possess with intent to distribute__
   __280 grams of cocaine 21 U.S.C. § 846  See Attachment —B—__

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial.
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☑

1

9. If you did appeal, answer the following:

(a) Name of court_____

(b) Result _____

(c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☑

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____     _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____The Petitioner Double jeopardy clause protects against second Prosecution for the same offense after acquittal, second Prosecution for same offense after conviction, and against Multiple Punishments for the same offense. The Government violates double jeopardy clause if it divides single conspiracy into Multiple Prosecutions. See Attachment Pages - A, B, C, D,

E, F, G, H, I, J, K, L,

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result_____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised___Based on the Government Plea agreement contract, it violates the Petitioner Constitutional Rights and Equal Protection and Due Process rights of Law by use the unconstitutional sentencing commission Guidelines by impose any type of sentence results in miscarriage of justice when their is no found by a jury. See Attachment Pages - A, B, C, D, E, F, G, H,

I, J, K, L,

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☑

(5) Result_____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.    Yes ☐ No ☑
(2) Second petition, etc.   Yes ☐ No ☑

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

See Attachment Affidavit explaining and supporting the Petitioner claim

of effective assistance of Counsel after pleaded guilty to count (1).

The Petitioner has no court documents from his Defense Counsel because she has a conflict of interest in my Sixth Amendment rights because she told me she was going to destroy me after I Plead guilty, and she involved my family in this case. My family spend many months suffer from my Defense Counsel because of her not only ineffective, but she was grossly negligent in this case and conclusion to the government Witness Protection Program. See Attachment -A- Affidavit explaining the Petitioner claim.

See Attachment Affidavit explaining supporting the Petitioner claim of

ineffective.

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

3

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: _____ Ineffective assistance of counsel claim.

defense counsel failed all Ground to appeal the Sentence.

Supporting FACTS (state *briefly* without citing cases or law) See Attachment Pages – A,
B, C, D, E, F, G, H, I, J, K, L,

B. Ground two: _____ defense counsel failed all Ground to appeal the

EIGHTY (80) MONTHS Sentence And 8 years Supervised Release.

Supporting FACTS (state *briefly* without citing cases or law): See Attachment Pages – A,
B, C, D, E, F, G, H, I, J, K, L,

C. Ground three: ineffective Assistance of Counsel.

PURSUANT TO AMBIGUOUS PLEA AGREEMENT CONTRACT

Supporting FACTS (state *briefly* without citing cases or law): at plea bargaining stage
government and counsel had a conflict of interest in the government
Witness Protection Program and had conflict interest in him and his
family life threatening situations now been Overlooked after my family
member obtained information for the Government on behalf for the
defendant and my spouse See Attachment -A- Affidavit explaining.———

4

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

(A) Defense Counsel failed to motion the Court to dismiss the Indictment because the statute 841(a)(1) is unconstitutional on its face to charge anyone to used in the Court and Failed to challenging Admissibility of the Evidence 21 U.S.C. § 846 existed between enhancement.

**(B) Defense Counsel failed to Protect his Sixth Amendment rights on Constitutional grounds of Evidence Wrongfully Obtained 780 grams.**

(C) Defense Counsel failed to motion the Court to dismiss the Indictment on its face to charge anyone to used in the Court and Failed to challenging Admissibility of the Evidence of Due Process and the Fourteenth Amendment Rights. Pursuant to the Government Witness Protection program for family life of the outcome should be well acquainted by all Party and the Department of Justice in Washington D.C. 20544. or by act of Solicitor General U.S. Department of Justice Washington, DC 20530- 001.

(D) Defense Counsel Ineffective Assistance of Counsel Failure to Motion the court to Dismiss U.S. Attorney or Grand Jury Indictment on Unconstitutional Grounds the defendant was Prejudiced by counsel by not required the court and the Government to asserted under OATH Explaining Plea offer of Conspiracy to Possess with intent to distribute cocaine 21 U.S.C. § 846 of the 280 grams **without enhancement.**

(E) Defense Counsel Ineffective Assistance of Counsel _ _ _ Pursuant to Rule (11) for Evidentiary hearing to the Court and Government Responsibility to the family under the Government Witness Protection Program is to not be in bad faith by the Government or the United States District Court of the Southern District of Alabama Division.

- A -

Ground 1 . . . The Supreme Court ruled however, in Glover v. United States, 148 L Ed 2d 604. that "any amount of actual jail time has Sixth Amendment Significance," where by Prejudice in this case is shown in that defendant had to spend many days in prison due to counsel's deficiency. The outcome, therefore, is critical.

Ground 2 . . . The Petitioner -- Mr. Garcia --- suffers from a grave miscarriage of Justice in this case also see Padilla v. Kentucky 599 U.S. 2011 and see Coleman v. Thompson 115 L.640: See Harris v. U.S. Retirement RD. 198 F.3d 139 (4th Cir. 1999) under U.S. v. Orocio 645 F.3d 630 (3rd Cir. 2011) the Appeals Court ruled that Padilla is retroactive to Collateral review.

Ground 3 . . . In United States v. Mikalajunas 186 F.3d 490 (4th Cir. 1999), it is held that "The existence of cause for a Procedural default of claim that could have been pursued ON direct appeal must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. Id at 490; _ _ _ _ ? It is generally preferred that a blameless Party not be disadvantaged by the Procedural errors of neglect of his attorney. Which NOW provides as follows in this on period for filing §2255 motion also see Missouri v. Frye, (2012) BL 67235 (U.S. 3/21/2012) and Lafler v. Cooper, BL 6736 (U.S. 3/21/2012) and See Strickland v. Washington, 466 U.S. 668 (1984) and see Hill v. Lockhart 474 U.S. 52 (1985) See Padilla v. Kentucky, 2010 BL 70791 (U.S. 2010); in support Petitioner - - - - - - claims.

See Attachment Affidavit explaining and supporting the Petitioner claim ineffective assistance of Counsel after pleaded guilty to count (1). See Attachment - A - B - C

D. Ground four:  assistance of Counsel after pleaded guilty to count (1).

Supporting FACTS (state *briefly* without citing cases or law):  Prosecutors Responsibilities; See Attachment - C - at page 3   as 141.   Judges' Responsibilities; See Attachment - C - at Page 4 as    142.  Issue No  Grounds raised Supreme Court's Rulings on Ineffective Assistance at Plea  Bargaining Stage call for New Efforts by Not Only Defense Counsel but Also Prosecutors and Judges. See Attachment - C - at Page 1 as 139.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: —--NEW---LAW---President Obama signed into **Law to Change the 1986 Laws**  - see *Baston V. Kentucky* 476 U.S. 79 (1986).

GROUND - - -- ------Pursuant to the new Guideline Amendment change for Constitutional for Unconstitutional Sentence on Drug Quantity of 50 grams or more without Jury trial in regard to the sentenced  5 years or 10 years or 20 years or 30 years or 40 years under 21: 846 or life imprisonment were  recognized Unconstitutional as now to 1987 to 2011. ————————

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing _____ *N/A* _____

(b) At arraignment and plea _____ *N/A* _____

(c) At trial _____

(d) At sentencing _____ (Latisha V. Colvin, Esquire)(Attorney)

In this case, it is generally preferred that blameless party not be disadvantaged by the Procedural errors of neglect of his defense Attorney See <u>Harris v. U.S RR Retirement RD</u> 198 F.3d 139 (4th cir 1999) under <u>U.S. v. Orocio</u>, 645 F.3d 630 (3rd cir 2011) the appeals court ruled that Padilla is retroactive to collateral review of Federal Rules of Criminal Procedures which provides as follows:

(1) "Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by Motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial or sentence or accept a Plea offer.

(2) Defenses and objections based on defects in the indictment or information (other than that it failed to show <u>jurisdiction in the court or to charge an offense, which objections shall be noticed by the Court at any time during the pendency of the proceedings); or</u> (emphasis added)

In this case, petitioner position is that the failure of his indictment to include 280 grams and not more of cocaine whatsoever is a structural, jurisdictional defect in his sentencing and convictions, which can be raised at any point in time, including today, and which this Court is required to notice and rule upon since it is fatal to the legal validity of his convictions. For the following reasons and based upon the authorities cited herein below, this Court must vacate Appellant's convictions and dismiss his Indictment.

Pursuant his Sixth Amendment rights of "MORE" ----? the quantity of drugs which will determine the defendant's guilt of a drug crime under 21 U.S. Code § 841 and/or § 846, and the duration of his sentence is not an essential element that must be set forth in the indictment, properly to charge the crime. In light of the U.S. Supreme Court's holdings in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 I.Ed.2d 435 (2000) and <u>Jones v. U.S.</u>, 562 U.S. 227, 143 I.Ed.2d 311,

119 S.Ct. 1215 (1999), there can be little doubt that drug quantity (or at least a description of quantity within one of the sentencing ranges set forth in 21 U.S. Code § 841(b) is a prerequisite to properly charging the defendant with a crime in the Indictment, and the failure to either mention the appropriate subsection of § 841(b) or a specific quantity of drugs (at least within a range) is a fatal, structural defect, which requires petitioner's sentence and convictions to be vacated and his Indictment dismissed.

In Apprendi, the U.S. Supreme Court wrote,

"The question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented.

Our answer to that question was foreshadowed by our opinion in Jones v. U.S. [citation omitted], construing a federal statute. We there noted that 'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increases the maximum penalty for a crime **must be charged in the indictment**, (emphasis added), submitted to a jury, and proven beyond a reasonable doubt.' Id., at 562 U.S. 243, n.6, 143 I.Ed.2d 311, 119 S.Ct. 1215. The Fourteenth Amendment commands the same answer in this case involving a state statute."

Id., at 147 I.Ed.2d 446.

See also, Almendarez-Torres v. U.S., 523 U.S. 224, 140 I.Ed.2d 350, 118 S.Ct. 1219 (1998). All of the Federal Courts that have considered the issue have held that "drug quantity" is an element of a drug crime under 21 U.S. Code § § 841 and 846, which must be set forth in the indictment and proven to the jury beyond a reasonable doubt. See U.S. v. R.L.C., 117 I.Ed.2d 59 (1992) [elements affecting sentencing must be found by a jury to be true beyond a reasonable doubt]. Pursuant to the U.S. Supreme Court's decision, the maximum sentence to which a defendant may be imprisoned is set forth in the sentencing guidelines,

not in the criminal statute of conviction, since the guidelines are themselves a product of the statute that incorporates them into the U.S. Code, which superseded the statutes that originally criminalized the conduct, 21 U.S. Code § § 841 and 846. Id. "Drug quantity is an element of those crimes." U.S. v. Angle, 230 F.3d 113 (4th Cir. 2000), vacated a pending rehearsing en banc; U.S. v. Pratt, No. 99-4424, 2001 WL 101457, at *6 (4th Cir., decided February 7, 2001); U.S. v. Aguayo-Delgado, 220 F.3d 160, 933 (8th Cir.), cert. denied, 121 S.Ct. 600 (2000); U.S. v. Doggett, 230 F.3d 160, 164,65 (5th Cir. 2000), cert. denied, 69 U.S.I.W. 3555 (U.S., Feb. 20, 2001) (No. 00-7819); U.S. v. Fields, No. 99-3138 (D.C. Cir., March 13, 2001), slip opinion at 2-5. The Indictment pursuant to which.. Mr. Garcia... charged does not contain all of the essential elements of the offense charged; namely, the element of a specific amount... 280 grams.. or more, NoT quantity of drugs (cocaine and more) was omitted from his indictment, which constitutes a fatal, jurisdictional defect in his convictions and sentence, such that his convictions must be vacated and the indictment dismissed. See, Fed. Rule Crim. Procedure 12(b)(2). Moreover, the failure of an indictment to charge an essential element can not be cured by amendment or through jury instructions. The Supreme Court has held:

> "The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either the prosecuting attorney or a judge."

Russell v. U.S., 369 U.S. 749, 771, 82 S.Ct. 1038, 1051, 8 I.Ed.2d 240 (1960) (citing Stirone v. U.S., 361 U.S. 212, 218, 80 S.Ct. 270, 4 I. Ed.2d 252 (1960)). To allow a prosecutor or court to make a subsequent

—E—

guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because a defendant could then be convicted and sentenced on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him. Russell, 369 U.S. at 770, 82 S.Ct. 1038; Jeffes v. U.S. 392 F.2d 749, 752-53 (9th Cir. 1968). It is well settled law that an indictment must plead all the elements of an offense, or it will be void. Hammling v. U.S., 418 U.S. 87, 117, 94 S.Ct. 2887, 41 I.Ed.2d 590 (1974). Accordingly, all essential facts and elements which are required to be presented to the trial jury by Apprendi, Jones and Almendarez-Torres, supra, must be pleaded and detailed in the indictment, and the failure of the indictment to contain such essentials constitutes a fatal, jurisdictional defect in the indictment, which can not be cured by trial court amendment or jury instructions. See, U.S. v. King, 587 F.2d 956, 963 (9th Cir. 1978, U.S. v. Morrisson, 536 F.2d 268, 288 (9th Cir. 1976), U.S. v. Keith, 605 F.2d 462 (1979), U.S. v. Fogel, 901 F.2d 23 (4th Cir. 1990), U.S. v. Loayza, 107 F.3d 257 (4th Cir. 1997), U.S. v. Pleasant, 125 F. Supp. 2d 173, 183-84 (E.D. Va. 2000):

> "[A]n admonition, twice uttered by the Fourth Circuit before, deserves repetition here: "Draft the indictment with the statute before you." See, U.S. v. Roberts, 296 F.2d 198, 202; U.S. v. Hooker, 841 F.2d 1225, 1232-33 (4th Cir. 1988)." Pleasant at 186.

Nevertheless, statutory citation alone in the indictment does not ensure that the grand jury has considered and found all essential elements of the offense charged. U.S. v. Pupo, 841 F.2d 1235, 1239 (4th Cir. 1988).

In the post-Apprendi context, this issue has most recently and definitively been addressed by several Federal Circuit Courts. In U.S. v. Tran, the Second Circuit, citing Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 I.Ed. 849 (1887) [among other cases], held that: (1) by pleading guilty a defendant does not waive his right to have been properly indicted, (2) that 'plain error' review of an element missing from the indictment is not appropriate, and (3) a district court lacks jurisdiction to enter any conviction or sentence a defendant, where an essential element of the offense attempted to be charged was omitted from the indictment. 234 F.3d 798, 805 (2d Cir, decided December 15, 2000).

In U.S. v. Brough, the Seventh Circuit upheld the Constitutionality of 21 U.S. Code § § 841 and 846, but also held:

> "[A] post-Apprendi indictment should specify, and the trier of fact must be instructed to determine, not only the elements of the offense, which appear in § 841 (a), but also the events listed in § 841(b) on which the prosecutor relies to establish the maximum sentence." 243 F.3d 1078, 1080 (7th Cir., decided March 22, 2001).

The Second Circuit's opinion in U.S. v. Barnes, anticipated the Supreme Court's decisions in Jones, supra, and Apprendi. 158 F.3d 662 (2nd Cir. 1998). In Barnes, the Court wrote:

> "The defendant's claim that he was entitled to a bill of particulars is not without merit. Count Twenty-Seven of the indictment was insufficient on its face to provide the defendant with sufficient detail to defend adequately the charges against him. The evidence at trial only served to confirm this obvious fact...
>
> Unlike the other counts of the indictment that were specific and detailed, County Twenty-Seven did not provide a single detail about the complex, multi-year conspiracy, nor the role that the defendant... played in assisting his co-conspirators or in carrying out its objectives. The only information provided was its duration, the names of the co-defendants, and [the names]... of the four narcotic drug controlled substances that the defendant conspired to possess with intent to distribute."

<u>Barnes</u>, at 158 F.3d 664-65.

The failure of an indictment to charge an essential element of the offense should be treated as a jurisdictional defect that an appellate court <u>must notice</u>, even if the defect was not noticed or raised by any party or the district court. <u>U.S. v. Foley</u>, 73 F.3d 484, 488 (2nd Cir. 1996) [citing <u>Bender v. Williamsport Area School District</u>, 475 U.S. 534, 541, 106 S.Ct. 1326, 1334, 89 L.Ed.2d 501 (1986), <u>U.S. v. Doyle</u>, 348 F.2d 715, 718 (2nd Cir. 1965) and <u>U.S. v. Meachem</u>, 626 F.2d 503, 509-510 (5th Cir. 1980)].

> "In assessing whether the indictment charges an offense under the statutory provision alleged, we note that [it] is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" <u>Hamling v. U.S.</u>, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (quoting <u>U.S. v. Carll</u>, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881). When, however, one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense. <u>See Id.</u> at 613. (indictment that failed to allege that the defendant knew an uttered document was forged failed to charge a crime, although the statute did not make the knowledge element explicit); <u>U.S. v. Ivic</u>, 700 F.2d 51, at 58-59, 64-65 (2nd Cir. 1983) (where the indictment tracked the language of the RICO statute, but did not allege economic motivation, which was an essential characteristic of the crime, the indictment failed to charge offense."

<u>Foley</u> at 73 F.3d 487-88.

Statutory citation within the indictment does not alone ensure that the Grand Jury has considered and found all essential elements of the offense the indictment is seeking to charge. <u>U.S. v. Pupo</u> 841 F.2d 1235, 1239 (4th Cir. 1988). (omission of the words "knowingly and intentionally" renders the Count fatally defective); <u>Finn v. U.S.</u>, 256 F.2d 304, 306 (4th Cir. 1958) (where intent or knowledge is an element

See <u>United States v. Simmons</u>, 649 F. 3d 237 (4th Cir. 2011)

– H–

of the offense, it must be pled with the indictment). Federal Courts have not only the power, but also the obligation, <u>at any time</u>, to inquire into jurisdiction whenever the possibility that jurisdiction is absent arises. <u>See</u>, <u>Philbrook v. Glodgett</u>, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); <u>City of Kenoshg v. Bruno</u>, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). <u>See also</u>, <u>U.S. v. Wabaunsee</u>, 528 F.2d 1, 2 (7th Cir. 1975).

Determining the correct maximum punishment is a "task outside the bounds of judicial interpretation." <u>U.S. v. Evans</u>, 333 U.S. 483, 495 (1948). In <u>U.S. v. Uwaeme</u>, the Fourth Circuit held that the quantity of drugs involved in the offense must be determined by the Jury. 975 F.2d 1016 (4th Cir. 1992). Yet it is not clear how the Jury could make such a determination as to drug quantity unless they were properly instructed by the Court, which also raises the issue of how the defendant can properly prepare to meet the Government's case, unless the indictment sets forth the quantity or amount of without "more" drugs allegedly involved.

In <u>U.S. v. DeLong</u>, the Fifth Circuit has recently held that an indictment which refers to the section of 21 U.S. Code § 841(b) specifying, or which itself specifies the applicable drug quantity range satisfies the requirements of <u>Apprendi</u> and <u>Jones</u>, <u>supra</u>, but, by implication, an indictment, such as Appellant's here, that fails to refer to 21 U.S. Code § 841(b) or to specify drug quantity, at least within a range of specific amounts, is structurally, jurisdictionally defective, and can not support any convictions or sentence at all 247 F.3d 593 (5th Cir. 2001).
But compare <u>U.S. v. Wilkes</u>, 130 F. Supp. 2d 222, 233-38 (D. Mass.2001),

arguing against, but ultimately constrained to follow U.S. v. Mojica-Baez, 229 F.3d 292, 306-311 (1st Cir. 2000).

Applicable Fourth Court Circuit precedents are in precise agreement with the holdings of the Second Circuit in Tran, the Fifth Circuit in DeLong and the Seventh Circuit in Brough, and contrary to the position taken by the First Circuit in Mojica-Baez. In U.S. v. Pomponio, the Fourth Circuit held that,

> "Where an indictment does not accurately and clearly allege all the ingredients of which the offense is composed, we have held it to be insufficient. Hale v. U.S., 89 F.2d 578 (4th Cir. 1937)."

517 F.2d 460, 463 (4th Cir. 1975).

See also, U.S. v. Rudisill, 215 F.3d 1323 (Table), 2000 WL 620314 (4th Cir. (N.C.)) (unpublished opinion, but all of the cases cited in Rudisill are published opinions of the Fourth Circuit, and also citing Jones v. U.S., 526 U.S. 227, 119 S.Ct. 1215 (1999)):

> "The failure of an indictment to allege an essential element is not subject to harmless error analysis, as it constitutes a 'structural defect in the trial mechanism.' U.S. v. Floresca, 38 F.3d 706, 711-14 (4th Cir. 1994)(en banc). See, U.S. v. Spruill, 118 F.3d 221, 227 (4th Cir. 1997); U.S. v. Hooker, 841 F.2d 1225, 1228 (4th Cir. 1988). It is error for the district court to sentence a defendant where an indictment fails to allege an essential element of the offense and the district court fails to include the element when advising the defendant of the elements of the crime with which he is charged. See, U.S. v. Davis, 184 F.3d 366, 371-72, n.5 (4th Cir. 1999).

Rudisill at 1-2 (decided May 15, 2000)--Mr. Garcia----Pled guilty to Counts One -----Pursuant to the Indictment on 9-23-2010, charging Appellant with violations of 21 U.S. Code § § 841(a)(1) [but not § 841(b)] and 846, do not mention or specify any amount or "MORE" (500 ----grams quantity of drugs whatsoever, but state only, "to possess with intent to distribute---280 grams -- or "MORE" of quantity of cocaine and cocaine ---, Schedule II controlled substances,

a violation of Title 21, United States Code, Section 841(a)(1) and 846." Indictment at pp. 2 and 4. The money laundering and money laundering forfeiture counts flow out of and are wholly dependant upon the validity of Counts One and Seven, which are supposedly the predicate "specified unlawful activities" (SUAs) that give rise to them. If the SUAs are fatally, jurisdictionally flawed, then Appellant has not legally been indicted or convicted of money laundering in violation of 21 U.S. Code § 853 either, and thus, there can be no money laundering forfeiture of his property at this time.

   In support of his argument that his convictions must be vacated Pursuant to the _ _ _ _ _ Pleaded guilty to count one (1) Indictment must be dismissed, due to the omission of any drug quantity or "MORE" amount, or even a reference to one of the subsections of § 841(b), Appellant is also relying upon the following additional authorities from outside **(et als)** Circuit: Courts.

1) <u>U.S. v. Dubo</u>, 186 F.3d 1177 (9th Cir. 1999) (reversing defendant's conviction and dismissing the indictment for failure to include an element of the charged offense); and

2) <u>U.S. v. Prentiss</u>, 206 F.3d 960 (10th Cir. 2000) (reversing defendant's conviction based upon a post conviction challenge to the indictment that failed to include an element of the crime charged, which the Court described as, "a fundamental jurisdictional defect that is not subject to harmless error analysis"); and

3) <u>U.S. v. Spinner</u>, 180 F.3d 514 (3rd Cir. 1999) (defendant's guilty plea vacated and case remanded, where the original indictment had failed to allege the 'interstate commerce' element of the crime); and

4) <u>Jeffers v. Chandler</u>, 234 F.3d 277 (5th Cir. 2000) (Petitioner attacking his Continuing Criminal Enterprise conviction collaterally in light of the Supreme Court's holding in <u>Richardson</u> <u>v. U.S.</u>, is permitted to file a § 2241 Petition, where he had previously filed and lost a § 2255 Motion before <u>Richardson</u> was decided, and he was otherwise procedurally barred by the AEDPA, since there was a "fundamental defect in his criminal conviction

The following two cases demonstrate that a Rule 12(b)(2) Motion, such as this petitioner here, is a proper vehicle for raising the issue of whether his convictions are structurally, jurisdictionally defective in the absence of the mention in the Indictment of either a subsection of § 841(b) or a specific quantity or amount (even within a range) of either cocaine without "MORE" of which has a different sentencing structure, depending upon the amounts involved. See also, Rhynes v. U.S., 196 F.3d 207 (4th Cir. 1999) (where indictment charges distribution of -- or more drugs, and the jury fails to specify whether it found the defendant guilty of distributing one drug, the other drug, or both drugs, by special verdict form, then the Court can only sentence the defendant based upon the drug carrying the lower sentence). This Court has previously held that a defendant may raise a defense or objection based upon the failure of the indictment to allege an essential element of the crime at any time during the proceedings pursuant to a Rule 12(b) Motion, U.S. v. Sutton, 961 F.2d 476 (4th Cir. (N.C.) 1992), cert. denied 113 S.Ct. 171, 506 U.S. 858, 121 L.Ed.2d 118 (1992). See also, U.S. v. Lewis, 730 F.Supp. 691 (W.D.N.C.1990) (same).

For a final point, since Appellant's case is before the District Court , he is not in any way limited or constrained by the Court Appeals Circuit's recent holding that until and unless the U.S. Supreme Court otherwise holds, Apprendi is not retroactively applicable on collateral review (as opposed to direct appeal). U.S. v. Sanders, 247 F.3d 139 (4th Cir., decided April 13, 2001). The U.S. Supreme Court may soon give some indication about retroactive application on collateral review. See, Tyler v. Cain, 121 S.Ct. 654 (2000), certiorari granted to resolve the retroactivity issue presented in West v. Vaughn, 204 F.3d

— L —

53 (3rd Cir. 2000) (plain language of § 2244(b)(2) incorporates the Teague retroactivity analysis. There is also Supreme Court precedent for the proposition that because Apprendi and Jones, supra. are both cases concerning statutory construction, they are retroactive, because they simply state what the statute has always meant, even if it has been misinterpreted or misapplied by the Courts for years. See, Rivers v. Roadway Express, Inc., 511 U.S. --, 113 S.Ct. 1250 (1993):

> "When the Supreme Court construes a statute, it is expanding its understanding of what the statute has meant continuously since the date when it became law. The decision of the Supreme Court as to what a certain statute has always meant serves to explain why the Courts of Appeals had misinterpreted the will of the enacting Congress."

Rivers, 113 S.Ct. at 1264.

See also, Fiore v. White, 121 S.Ct. 712 (2001). In Fiore, the Supreme Court held that a federal habeas court must apply a state Supreme Court's decision interpreting the elements of a state criminal law, even when the state Supreme Court's decision was announced after the Petitioner's conviction under the statute became final. Following Mr. Fiore's conviction, the Pennsylvania Supreme Court ruled, in a co-defendant's case, that the statute under which Fiore had been convicted did not criminalize the conduct in which he had engaged. The state Supreme Court refused to reconsider Fiore's case, and the Third U.S. Circuit Court of Appeals refused to apply the rule. The U.S. Supreme Court reversed, holding that the failure to apply the state Supreme Court's interpretation meant that the petitioner had been convicted absent proof of one of the elements of the crime. Such a conviction violates Due Process of Law, guaranteed by the Fifth and Sixth Amendment to the U.S. Constitution which prohibits conviction

unless all the elements of the crime are proven beyond a reasonable doubt, citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979) and <u>In re:Winship</u>, 397 U.S. 358, 364, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970).

Based upon the foregoing arguments and citations of authorities, Appellant respectfully submits that his criminal convictions in this case must be vacated and set aside, since the trial court was without jurisdiction to enter such convictions or sentence him, due to the absence of an essential element.

## CONCLUSION

WHEREFORE, Appellant respectfully prays that this Court vacate his sentence and convictions and dismiss the Indictment on 9-23-2010, and that the Court grant him such other and additional relief to which he may be entitled to the Equal Protection and Due Process rights of Law in this Motion.

WHEREFORE, the Petitioner __ Mr. Garcia __ is requesting this Honorable Court to appoint him a Qualified Counsel to represent him in this case without Prejudice of Prejudicial error of Constitutional error ----------------------------------------------------------------?

This _Oct_ day of _02_ 2012; Under Title 28 U.S.C., 1746(2);

by _Jose Luis Rivera garcia_

Jose Luis Rivera Garcia

— N —

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served a copy of the Motion under 28 U.S.C. § 2255 for Government by placing a copy of it into an envelope, with proper First Class postage affixed thereto into Legal Mail Box at F.C.I. Petersburg, for forwarding by the U.S. Bureau of Prisons to the U.S. Postal Service, addressed as follows:

U.S. District Court
Office of the Clerk
113 St. Joseph
Mobile, AL 36602

U.S. Attorney Office
U.S. Assistant Attorney
113 St. Joseph
Mobile, AL 36602

cc: Attorney
Solicitor General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530 — 001

This _Oct_ day of _02_ 2012:

Under Title 28 U.S.C. 1746-(2)

Respectfully Submitted by:

_Jose Luis Rivera garcia._

Jose Luis Rivera Garcia
# 08744-003
F.C.I. Petersburg (Low)
P.O. Box 1000
Petersburg, VA 23804-1000

AO 243 (Rev. 6/86)

(e) On appeal _____

_____

(f) In any post-conviction proceeding _____

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☒ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: 8  years supervised

released  IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

ALABAMA DIVISION. See Attachment – D –

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_Jose Luis R. Garcia_
Signature

I declare under penalty of perjury that the foregoing is true and correct. Executed on

Oct - 02 - 2012
(date)

_Jose Luis R. Garcia_
Signature of Movant

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
DIVISION


JOSE LUIS RIVERA GARCIA
          Petitioner; Pro-Se

                                        Case No: 1:10-cr-00179-001


          VS.


UNITED STATES OF AMERICA
          Respondents (et aLs) Esq


# ATTACHMENT- A —

---

    See Attachment Affidavit explaining and supporting the Petitioner claim
Ineffective Assistance of Counsel after pleaded guilty to count (1).
also see  Count 1 of the Indictment on 9-23-2010

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT ALABAMA
(et als)/Esq
U.S. DEPARTMENT OF JUSTICE


JOSE LUIS RIVERA GARCIA/ and, Nancy Romero, Plaintiff
et als _ _ Petitioner; Pro-Se

Case No: 1:10-cr-00179-001


VS.


UNITED STATES OF AMERICA
        Respondents (et aLs) Esq


### DECLARATION OF AFFIDAVIT IN SUPPORT OF
### PETITIONER JOSE LUIS RIVERA GARCIA CLAIM ON
### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS AT
### PLEA BARGAINING STAGE


COMES NOW, the Petitioner Jose Luis Rivera Garcia; Pro-Se Litigant Pursuant to

this Honorable Court under the constraining of Haines V. Kerner, 404 U.S. 519, 30 Ed

2D 652. 92 S.Ct 594 (1972) this is Pursuant to 28 U.S.C. § 1746, Unsworn Affidavit Of

True Facts, a Person can give an Affidavit affirmed under penalty of Perjury,

subsequently submitted into Court that will stand as Fact, if unrebutted. Such same

will carry like weight in court as a Sworn Affidavit; as government Witness Protection

Program for my family member.


### UNSWORN AFFIDAVIT OF TRUE FACTS
### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS BY
### DEMONSTRATE BY THE PETITIONER PRO-SE


Issue No:1 _ _ _ _ Misconduct in this case was slow justice in the balance by the

government Plea agreement,

Issue No:2 _ _ _ _ Ineffective assistance of counsel claims there was no

evidentiary hearing in the court to required for the defendant family under government

Witness Protection Program; claim that counsel provided incompetent advice not to

accept a Plea offer. Defendant asserted under OATH he would have accepted Plea offer a substantial disparity existed between enhancement may be imposed with the sentence offered and the trial counsel did not provide a detailed credible Affidavit Explaining the plea offer the court and Government and defendant; the defendant was Prejudiced by counsel by not required the court and the Government to holding an evidentiary hearing See Attachment – A – B – C – Mr. Garcia _ _ his counsel had a conflict of interest in the government Witness Protection Program and had conflict interest in him and his family life threatening situations now been Overlooked after my family member obtained information for the Government on behalf for the defendant and my spouse.

## EMPHASIZE

Issue No:3 _ _ _ _ Prosecutors Responsibilities; See Attachment – D – at page 3 as 141.

Issue No:4 _ _ _ _ Judges' Responsibilities; See Attachment – D – at Page 4 as 142.

Issue No:5 _ _ _ _ Supreme Court's Rulings on Ineffective Assistance at Plea Bargaining Stage call for New Efforts by Not Only Defense Counsel but Also Prosecutors and Judges. See Attachment – D – at Page 1 as 139.

## SUPPORTING FACTS

(1) The Supreme Court ruled however, in Glover V. United States, 148L Ed 2d 604 that any amount of actual jail time has Sixth Amendment Significance Where by Prejudice in this case is shown in that defendant had to spend many days in prison due to Defense Counsel deficiency. The Outcome therefore is critical, See Missouri V. Frye 2012 BL 67235 (U.S. 3/21/2012) see Lafler V. Cooper, BL 67236 (U.S. 3/21/2012)

(2) The Petitioner Mr. Garcia and his family suffers from a grave Miscarriage of Justice in this case because of my Defense Counsel Ineffective Assistance also see Padilla V. Kentucky 599 U.S. 2011 and see Coleman V. Thompson, 115 L. 640: See Harris

V. U.S. Retirement RD 198 F.3d 139 (4th cir 1999) under U.S. V. Orocio 645 F.3d 630 (3rd cir 2011) the Appeals Court ruled the Padilla is retroactive to collateral review.

<div align="center">SUPPORTING FACTS</div>

The Plaintiff Ms. Romero _ _ _ was not charged or indicted in this case Pursuant to a violation of a 21 U.S.C. § 841(a)(1) or 846 conspiracy or 853 for forfeiture "NO Charged of any violation", Plaintiff further invokes this court's jurisdiction Pursuant to (Federal Question), for her to stay in the Unite States, to be free from unreasonable and Cruel and Unusual Punishments under the Fourteenth Amendment. Constitutional matters as well as Treaties, and territorial jurisdiction, See Attachment Pages - A, B, C, D, E, how was acting Under Color of Law.

The Petitioner has no court documents from his Defense Counsel because she has a conflict of interest in my Sixth Amendment rights because she told me she was going to destroy me after I Plead guilty, and she involved my family in this case. My family spend many months suffer from my Defense Counsel because of her not only ineffective, but she was grossly negligent in this case and conclusion to the government Witness Protection Program.

My statement is true and will swear in under Oath if needed and my knowledge. This ___OCt___ day of ___02___ 2012;

Respectfully Submitted

Signature *Jose luis R. garcia*

Printed *Jose luis R. garcia.*

## CERTIFICATE OF SERVICE

I, Jose Luis Rivera Garcia hereby certify that a copy of this declaration of Affidavit in support of Petitioner claim on ineffective Assistance of Counsel claim at plea bargaining stage and government Witness Protection Program for his family was mailed Pre-paid Postage, U.S. Mail at _ _ VA _ _ F.C.C. Low institutional Mail upon the following on this ___ $OCt$ ___ day of ___ $O2$ ___ 20_$12$_

Mailed To:

Honorable U.S. District Judge

U.S. District Court
Office of the Clerk
113 St. Joseph
Mobile, AL 36602

U.S. Attorney Office
U.S. Assistant Attorney
113 St. Joseph
Mobile, AL 36602

U.S. Department of Justice
Office of the Solicitor General
Washington, D.C. 20530-001

Melvin Howard
900 Western America CIR
Mobile, AL 36609-301
United States

Kandace Barr
900 Western America CIR
Mobile, AL 36609-301
United States

Eric Day
63 S Royal ST
Mobile, AL 36602-600
United States

Blaine Crum
900 Western America CIR
Mobile, AL 36609-301
United States

This ___ $OCt$ ___ day of ___ $O2$ ___ 20_$12$_ under title 28 U.S.C.A. 1742(2).

Respectfully Submitted,

by *Jose Luis R garcia*.

Jose Luis Rivera Garcia
# 08744-003
F.C.I. Petersburg (Low)
Petersburg, VA 23804

For the U.S. District Court / Honorable U.S. District Judge Callie vs. Granade

Before me came the affiant WITH proper identification and attested to the above on

this day _26_ of _September_ 20_12_ _

The affiant Name _Jose luis Rivera garcia_

Notary Public _Shannon Marie Vredenburg_
Printed Name

Notary Public _Shannon marie Vredenburg_
Signature

My commission expires on: _9.30.2012_

My commission number is: _7228951_

# ATTACHMENT– A –


COPY

NO: 1: 10-CR-00179-001

SOUTHERN DISTRICT OF ALABAMA
# FEDERAL DEFENDERS ORGANIZATION
11 North Water Street, Suite 11290
Mobile, Alabama 36602
(251) 433-0910  Fax: (251) 433-0686

Executive Director
*Carlos A. Williams*
www.federaldefender.org

Reply to: Carlos_Williams@fd.org

Assistant Federal Defenders
*Latisha V. Colvin*
*Christopher Knight*
*Peter Madden*
*Kristen Gartman Rogers*
*Fred W. Tiemann*

Research & Writing Attorney
*Elsie Mae Miller*

August 15, 2012


U.S. Immigration and Customs Enforcement
Office of The Chief Counsel
126 Northpoint Drive, Room 2020
Houston, Texas 77060

Re: Ms. Nancy Romero

Dear Sir/Madam:

By way of introduction, my name is Carlos A. Williams, I am the Federal Defender for the Southern District of Alabama. I submit this statement in support of Nancy Romero's application to extend her work permit. The story of why Immigration and Customs Enforcement officials granted Ms. Romero's papers authorizing temporary residence and a work permit, as will be seen below, also supports her request for an extension of her work permit. The work permit was issued by ICE officials here in Mobile, Alabama. I have been advised by the United States Attorney for the Southern District of Alabama, that Ms. Romero's case has been transferred to Houston where she resides with her two minor children.

In August of 2010, we represented Bladimir R. Arbodela in case No. 10-00179. Mr. Arbodela is the common law husband of Nancy Romero and the father of her two American born minor children. He was charged in a drug distribution conspiracy. Nancy Romero was never charged or alleged to be involved in any illegal conduct.

Mr. Arbodela cooperated with the government and that led to a wide ranging investigation of a large drug distribution ring from Houston, Texas to Mobile, Alabama. Mr. Arbodela's cooperation resulted in a number of arrests and convictions. Some associated with the ring escaped arrest. The ring was linked to individuals in Colombia, but operated out of Houston, Texas. Members of that ring were involved in other crimes, including home invasions. During the course of that investigation, agents learned that some individuals in the ring presented a clear and present danger to the safety of Arbodela's family, including Nancy Romero who then resided in Houston, Texas, and Arbodela's mother, who lived in Buenaventura, Colombia.

1

Just prior to the arrest of a number of the ring members in Houston, Texas, ICE agents removed Arbodela's mother from her home in Colombia. Around the same time, they also whisked Ms. Nancy Romero and her child, (at the time, she was pregnant with her second child) from Houston. All were taken to an undisclosed location in Alabama. During the pendency of the case, Arbodela's mother, wife and child were housed in an undisclosed hotel. During that time she gave birth to her second child. Both of her children are citizens of the United States. According to government agents, the initial plan was to enroll them in the witness protection program. That application was not approved by DOJ, and Arbodela's family remained in a hotel during the pendency of the case until local funds were exhausted.

The government ultimately returned Arbodela's mother to another city in Colombia. Upon information and belief, she currently resides in that city because she cannot safely return to her home in Buenaventura. The government resolved to obtain public housing for Ms. Romero, her child, and newborn infant in a rural area in north Alabama. Ms. Romero declined. She could not envision surviving on her own with a minor child, an infant, a new town, without transportation, without the means to work, without funds or a network of friends. Since she was being cast adrift on her own, Ms. Romero reasonably believed, despite the potential danger, that she could best survive in Houston, Texas where she had a network of friends.

On or about November of 2011, ICE agents returned Ms. Romero, her minor child and infant son to Houston, Texas and gave her $300. Ms Romero did not have a home, work permit, job, or transportation. For months she relied on the assistance of friends for housing, and other necessities. The government agents agreed, however, to transfer her eligibility for public housing or section eight benefits to Texas. They also promised to provide her with a work permit. In the interim Ms. Romero and her children relied on the kindness of friends, and religious organizations. Ms. Romero and her children were temporarily housed by a network of friends. As a result, she moved from one apartment to the next for several months until her application for section eight housing was granted. She was allowed to live rent free for a few months, but must now pay a portion of the rent.

Since she did not have a work permit, Ms. Romero could not apply for work. From time to time, she earned a living as a baby sitter. She continues to struggle for herself and her minor children, the innocents in this affair. On or about the end of July 2012, Romero obtained the long promised work permit. That permit, which was actually issued on November 3, 2011, expires on November 2, 2012. The government did not explain their delay in providing the work permit to Ms. Romero, three months shy of its expiration date.

Arbodela's cooperation was extensive. The damage done to this drug ring is, no doubt, still fresh in the minds of those involved, and will likely remain so for some time because the court imposed extensive periods of imprisonment. Ms. Romero's return to Colombia now will expose her and her American born children to the very dangers the government sought to avoid by removing her and her child from Houston. Similarly, the failure to renew her work permit will once again place Romero and her children at risk. It would deprive her of legitimate means to earn a living, hamper her continuing ability to provide shelter, and place her and the minor children at risk. For all the above reasons, I respectfully request that Ms. Romero's work permit

2

be renewed.

Sincerely,

Carlos A. Williams

cc:     Kenyen Brown,
        United States Attorney
        Southern District of Alabama

ATTACHMENT- B

Blaine C. Crum
Group Supervisor
ASAC Mobile
Homeland Security Investigations

U.S. Department of Homeland Security
900 Western America Cir, Ste 301
Mobile, AL 36609
(251) 441-5244 desk
(251) 648-9857 cell
blaine.crum@dhs.gov



# Homeland Security

v

## U.S. DEPARTMENT OF JUSTICE
## UNITED STATES ATTORNEY'S OFFICE
## SOUTHERN DISTRICT OF ALABAMA

**Eric T. Day**
Victim Witness Specialist
251-709-6565

Riverview Plaza, Suite 600
63 South Royal Street
Mobile, AL 36602

Direct Line: (251) 415-7120
Telephone: (251) 441-5845
Fax: (251) 441-5133
E-mail: eric.day@usdoj.gov

## U.S. Immigration and Customs Enforcement



*Kandy*
**Kandace Barr**
**Special Agent**

900 Western America Circle
Suite 301
Mobile, AL 36609       Kandace.Barr@DHS.gov

(251)441-6152 Office
(251)441-5245 Fax

**Melvin Howard**
*Senior Special Agent*
*ASAC Mobile*

U.S. Department of Homeland Security
900 Western America Circle Suite 301
Mobile, AL 36609

251 441 5715 tel
251 441 5245 fax
melvin.howard@dhs.gov



## U.S. Immigration and Customs Enforcement

ATTACHMENT- c -

# DOJ unit to punish ethical lapses

## Discipline slow in misconduct cases

By Brad Heath and Kevin McCoy
USA TODAY

WASHINGTON — The Justice Department created a new internal watchdog office on Tuesday to make sure federal prosecutors face swifter and more consistent punishment if investigators find that they committed misconduct.

The change comes after a USA TODAY investigation that identified 201 criminal cases in which federal courts had found that Justice Department prosecutors had broken laws or ethics rules — violations that put innocent people in jail and set guilty people free. Although each of the cases was so serious that judges overturned convictions or rebuked the prosecutors for misconduct, USA TODAY found that the department often took years to investigate what went wrong, and that prosecutors faced little risk of being fired.



Attorney General Eric Holder said in a statement Tuesday that while most federal prosecutors meet their ethical obligations, the current procedures for disciplining those found to commit misconduct "consume too much time, and risk inconsistent resolution." He said the new unit "will help change that by providing consistent, fair and timely resolution of these cases."

The unit, called the Professional Misconduct Review Unit, will be responsible for disciplining career prosecutors when the department's ethics investigators conclude that they engaged in intentional or reckless misconduct. Until now, those decisions had been made by the prosecutors' supervisors, most often U.S. attorneys. The department has faced criticism for not doing enough to investigate and punish misconduct.

ATTACHMENT - D -

NO: 1:10-CR-00179-001

# BNA Insights

RIGHT TO COUNSEL

## Supreme Court's Rulings on Ineffective Assistance at Plea Bargaining Stage Call for New Efforts by Not Only Defense Counsel but Also Prosecutors and Judges



By Laurie L. Levenson

It is a big year for U.S. Supreme Court cases. Health care, affirmative action, GPS devices, strip searches—the court selected many of the hot-button issues to decide this term. Among the most important cases are *Missouri v. Frye*, 2012 BL 67235 (U.S. 3/21/2012), and *Lafler v. Cooper*, BL 67236 (U.S. 3/21/2012). In these opinions, the court recognized that plea bargaining lies at the heart of the way that the current criminal justice system operates. Thus, the court's decision to set standards for defense counsel's assistance during plea bargaining has the potential to dramatically affect how plea bargaining is handled in this country.

Plea bargains are the lifeblood of the American criminal justice system. Current studies suggest that up to 95 percent of all cases are resolved by plea bargaining. Yet, courts rarely monitor what occurs during the plea-bargaining process. Practices vary tremendously. From extensive negotiations with formal, written plea-agreement contracts to a process most resembling horse-trading in arraignment courts, defendants' fates are resolved by lawyers deciding, with only minimal input by the client, how cases should be resolved. With the focus on efficiently and expeditiously resolving cases, defendants—especially those least educated and sophisticated—often get left in a fog.

In his opinions in *Frye* and *Cooper*, Justice Anthony M. Kennedy tried to change that dynamic by holding that the minimum standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), also apply to plea bargaining by counsel. Yet, as even Kennedy had to admit, a standard established to judge counsel's performance at trial or in preparing for trial is less than a perfect fit for the plea-bargaining process.

First, it is important to look at exactly what the court decided in this pair of 5-4 opinions. Then one must consider the likely practical impact on defense lawyers, prosecutors, and judges.

### Missouri v. Frye: 'Thou Shalt Communicate With Your Client!'

In *Frye*, Galin Frye was charged with driving with a revoked license. Because this was his fourth violation, he was charged under Missouri law with a felony that carried a maximum four-year prison term. The prosecutor sent Frye's lawyer a letter offering to reduce the charge to a misdemeanor and to recommend a 90-day sentence if Frye would plead guilty. Frye's lawyer never conveyed the offer to Frye, and the offer expired. Right before Frye's preliminary hearing, he was arrested again for the same offense. Frye ended up pleading guilty with no underlying plea agreement and was sentenced to three years in prison.

On habeas corpus review, Frye claimed his Sixth Amendment right to effective assistance of counsel was violated because his counsel failed to inform him of the prosecution's plea offer and he would have accepted the offer if he had known about it. The first hurdle Frye had to overcome in making his claim was to convince the court that he had a right to effective assistance of counsel at the plea-bargaining stage, given that the Supreme Court has never recognized a constitutional right to plea bargaining. Yet the majority in *Frye* had little trouble recognizing plea bargaining as a "critical stage" at which the Sixth Amendment guaranteed the defendant the right to counsel.

Extrapolating from the court's opinion in *Hill v. Lockhart*, 474 U.S. 52 (1985) and its more recent decision in *Padilla v. Kentucky*, 2010 BL 70791 (U.S. 2010), Kennedy held that the Sixth Amendment guaranteed Frye the right to effective assistance of counsel during

*Laurie L. Levenson is professor of law and holds the David W. Burcham Chair in Ethical Advocacy at Loyola Law School, Los Angeles.*

plea bargaining. Neither *Hill* nor *Padilla* was directly on point because they focused more on whether counsel's misadvice negated their clients' guilty pleas. In *Hill*, defense counsel misinformed the defendant of the amount of time he would have to serve before he became eligible for parole. In *Padilla*, the court set aside a plea because defense counsel misinformed the defendant of the immigration consequences of the conviction. Yet the language from these cases became critical to the task of finding a general duty of effective assistance of counsel in plea bargaining. In particular, Kennedy focused on the court's statement in *Padilla* that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."

Although Kennedy recognized that there is a difference between invalidating a plea because bad advice was given regarding the guilty plea and the situation in *Frye*, where the challenge was to defense counsel's conduct during plea bargaining before the plea proceedings, he found that the differences were not constitutionally significant. More important, he was convinced that the "simple reality" of our criminal justice system made it imperative for the court to include counsel's conduct during plea bargaining within the Sixth Amendment's umbrella. As Kennedy noted, 97 percent of federal convictions and 94 percent of state convictions are the result of guilty pleas. "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages," he stated.

Yet, recognizing the right to effective assistance of counsel during plea bargaining was just step No. 1 in the court's analysis. The more challenging task was defining what standards should be used in measuring whether counsel has met Sixth Amendment requirements. Pursuant to the ineffective assistance of counsel standard set forth in *Strickland*, a defendant must demonstrate that counsel's representation fell below professional standards. While it may not be possible to identify exact standards for how counsel should act during plea bargaining, the minimum requirements are not that difficult to identify.

The most basic requirement is that a lawyer must actually communicate the terms of a formal plea offer to the client. Especially when there is an offer with an expiration date, defense counsel must let the client consider the offer before it expires. This is not a new concept. The American Bar Association standards for Criminal Justice and many states' professional standards require counsel to promptly communicate and explain plea offers to a client. See ABA Standards for Criminal Justice, Pleas of Guilty 14.3.2(a) (3d ed. 1999).

Step No. 2 of the *Strickland* analysis, as applied to plea bargaining, is a little more challenging. How does a defendant show that counsel's ineffective assistance during plea bargaining prejudiced his or her case? Here, the court held that to establish prejudice, *Frye* would have to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." If it is an offer, like that in *Frye*, that could be withdrawn by the prosecution or

rejected by the court, the defendant must show that the offer would have remained and that he would have received the benefit of the plea bargain.

Despite the many "ifs" in the court's standard, the majority felt confident that on remand these issues could be resolved. In fact, the court suggested that *Frye* might not be able to meet the standard given that he picked up a new charge for driving without a license shortly before his plea, which quite likely might have led the prosecution to withdraw its offer or have prompted the trial court to reject it. Nonetheless, *Frye* should have an opportunity to demonstrate whether his case was prejudiced.

Justice Antonin Scalia wrote for the four dissenters, who objected to the majority's decision on the most basic level. As the dissent states, "The plea-bargaining process is a subject worthy of regulation, since it is the means by which most criminal convictions are obtained. It happens not to be, however, a subject covered by the Sixth Amendment, which is concerned not with the fairness of plea bargaining but with the fairness of conviction." *Frye* never argued that he was not guilty of the offense to which he pleaded guilty. His conviction was fair, even though he might have hoped for a more favorable resolution of the case.

## Lafler v. Cooper: 'Thou Shalt Give Your Client Accurate Information in Deciding Whether to Accept a Plea Bargain'

In the companion case of *Lafler* v. *Cooper*, Kennedy again wrote for the majority. While this was another case involving plea bargaining, the misstep by defense counsel was different.

Anthony Cooper was charged with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in commission of a felony, misdemeanor possession of marijuana and for being a habitual offender. Evidently Cooper, a convicted felon, pointed a gun and shot at his victim's head. The shot missed and the victim ran. Cooper shot again and hit her in the buttocks, hip, and abdomen. She survived the shots.

Prosecutors twice offered to dismiss two of the charges and recommend a sentence of 51 to 85 months for the other charges. Defendant admitted his guilt in communications with the court and expressed a willingness to accept the offer. However he changed his mind when his lawyer convinced him that the prosecution would be unable to establish intent to murder the victim because she had been shot below the waist. Cooper ended up going to trial, rejecting yet another plea offer on the first day of trial. He was convicted by a jury and received a mandatory minimum sentence of 185 to 360 months' imprisonment, more than three times what he would had received if he had accepted the prosecution's initial plea offer.

Using the analytic structure established in *Frye* and *Strickland*, the Supreme Court held that counsel's advice constituted ineffective assistance of counsel. First, the parties conceded that counsel's performance was deficient. No competent counsel would have believed that Cooper could not be found to have the intent to murder simply because his shots had hit the victim below the waist. Second, the court held that, but for counsel's deficient performance, there was a reasonable

COPYRIGHT © 2012 BY THE BUREAU OF NATIONAL AFFAIRS, INC.
CRL    ISSN 0011-1341

probability that he and the trial court would have accepted the guilty plea. His letters to the court and testimony at a post-conviction hearing established that fact.

The real issue was what the remedy should be. How could Cooper be made whole at this point? The Supreme Court held that the proper remedy was to order the state to reoffer the plea bargain.

While raising issues similar to those in *Frye*, *Cooper* added another dimension to the court's decision to recognize a right to effective assistance of counsel during plea bargaining. Cooper's case was not like that of *Hill*, in which the court had held that improper advice by counsel could invalidate a guilty plea. Cooper went to trial. He did not argue that he received an unfair trial. Rather, he relied on a yet-to-be-recognized right to accept a plea bargain.

In the end, the court found the distinction to be without a difference. The defendant's fair trial did not wipe clean his lawyer's deficiencies. With plea bargaining such a critical aspect of the criminal justice system, saying that a fair trial makes up for any deficiencies in counsel's conduct during the pretrial process ignores the reality of the substantial effect plea bargaining can have on a defendant's future.

The dissent was even more vociferous in *Cooper* than it had been in *Frye*. Writing for the dissenters, Scalia lamented the creation of a "whole new field of constitutionalized criminal procedure: plea-bargaining law." He warned that there are many more dimensions of plea bargaining that will have to be addressed and that, although the two cases this term focused on defense counsel's behavior, the next ones down the road may inevitably try to establish "constitutional" rules regarding prosecutors' behavior in the criminal justice system.

For the dissenters, a defendant's constitutional rights are about whether the defendant received a full and fair trial. Since Cooper received such a trial, he had no constitutional right to a plea bargain. Moreover, the court's remedy that the prosecution reoffer its original plea offer constituted undue interference with the criminal justice process, they said. Plea bargaining may be in great use in the United States, but it is at best "a necessary evil" and "embarrassing adjunct" to our criminal justice system, according to Scalia. By recognizing the right to effective assistance of counsel at plea bargaining, the court had shifted to making plea bargaining "the criminal justice system."

In language that is the trademark of Scalia, he wrote:

The Court today embraces the sporting-chance theory of criminal law, in which the State functions like a conscientious casino-operator, giving each player a fair chance to beat the house, that is, to serve less time than the law says he deserves. And when a player is excluded from the tables, his *constitutional* rights have been violated. I do not subscribe to that theory. No one should, least of all the Justices of the Supreme Court.

The other dissenters did not join in this part of his opinion, but his point was clear. The Constitution guarantees the right to a fair trial, and nothing that happens in the plea-bargaining process undermines that right.

In his separate, solo dissent, Justice Samuel A. Alito Jr. focused on an evident weakness in the majority's decision. The majority left implementation of the remedy to the trial court. Is it fair after the prosecution goes to trial to require it to vacate some of the convictions?

Alito wondered. How will courts decide what to do when, years after a conviction, there is an allegation that the defendant received ineffective assistance of counsel during the plea-bargaining process? It is well and good for the court to say that it leaves the issue to the "discretion of the trial court," but there is very little guidance about how judges should exercise that discretion, he said.

## Aftermath of *Frye* and *Cooper*: What Do We Do Now?

How are *Frye* and *Cooper* likely to change the actions of defense counsel, prosecutors, and the courts? The court's decisions in these cases are likely to have a significant practical impact on plea bargaining practices across the nation.

**Defense Counsel's Responsibilities.** First, defense lawyers must do what they should have been doing all along. They need to talk to their clients and give them accurate advice. This may sound easy, but in the quick-moving, rough-and-tumble world of plea bargaining, it is not always easy for counsel to have in-depth discussions about all the prosecution's offers. Often, their clients cannot be reached by simply picking up the phone. Defense lawyers must go through elaborate processes to visit clients in jail and, even then, the conditions are less than optimal for having full conferences regarding plea offers.

Second, defense counsel must keep clear records of not only the offers prosecutors present but also their expiration dates, how likely they are to be withdrawn, how and when the offers were presented to the client, and what changes were made in the offers. Of course, many lawyers already do this, but the Supreme Court's decisions will make the lawyer's recordkeeping key evidence in any post-conviction or post-trial hearings.

Third, defense counsel should probably give every indication to the prosecution that a defendant is likely to accept an offer, even if counsel is unsure, so that the record remains strong for subsequent proceedings. Therefore, it might be more difficult for defense counsel to be as candid with prosecutors as to the likelihood of a defendant accepting a plea offer because telling a prosecutor straight out that a client does not seem so inclined may later hurt the defendant's chances at post-conviction relief.

Finally, defense counsel must consider every plea bargain to be as important as a trial. This is not necessarily a bad thing. Certainly a defendant pleading guilty would expect such a commitment by defense counsel. Yet, for defense lawyers, pleas have long taken a back seat to trial preparation. Given the court's decisions, this can no longer be the case.

**Prosecutors' Responsibilities.** Prosecutors will also find themselves with newfound responsibilities after *Frye* and *Cooper*. To ensure that a defendant will not be able to win reversal of his conviction years down the line, prosecutors should document all plea offers, their expiration dates, the conditions under which they will be withdrawn, and whether they are binding on the court. Then, the prudent prosecutor may ask for written confirmation that the offer has been shared with the client. Undoubtedly prosecutors' offices will start developing signed notice forms that can be used to document plea offers.

Prosecutors should also ask the court to put on the record before a trial whether there were any plea offers and that the defendant rejected the offer. The complication with this is that judges, at least in the federal system, should not be involved in plea bargaining. One must be concerned how even this effort might subtly involve the judge in plea discussions. Thus, it may be necessary to have the defendant verify that a plea offer was made but have the written terms of that plea offer lodged with the court under seal.

Finally, prosecutors might find themselves in the awkward position of having the court inquire whether defense counsel has not only shared a plea offer but has adequately answered the defendant's questions regarding the process and applicable law that would affect his decision whether to accept the offer.

The plea-bargaining process, which is intended to make the criminal justice process more expeditious, may need to be slowed down to accommodate the new procedures that will ensure effective assistance of counsel during plea bargaining.

**Judges' Responsibilities.** Ultimately, the responsibility will fall on judges to ensure that defense counsel adequately participates in the plea-bargaining process. This is true regardless of whether the case ends in a guilty plea or with a trial. A prudent judge will now ask the parties and counsel whether there were any plea offers and whether their terms were communicated to the defendant. Moreover, the judge may also ask counsel to put on the record, in camera or in open court, why a defendant is declining a plea offer.

The judge must take these steps without interfering with the attorney-client relationship. Defense counsel may be privy to additional information demonstrating why a defendant should not accept the deal, but the judge is not necessarily entitled to have all this information. Judges must also resist the temptation to second-guess defense counsel's strategy in counseling a client

to reject a plea offer. As in *Strickland*, great deference should be afforded to the decisions of defense counsel. While the court may view a plea offer as too good to refuse, defense counsel may have strategic reasons to suggest that the defendant reject a specific plea offer.

Finally, the court must maintain its role as an impartial decision maker and resist any temptation to be drawn into the actual plea negotiations. Pursuant to Fed. R. Crim. P. 11(c) (1), "The court must not participate in [plea agreement] discussions." To preserve the court's impartiality and avoid putting undue pressure on a defendant to accept a plea deal, the rules specifically prohibit judges from participating in plea bargaining. See *United States v. Bradley*, 455 F.3d 453 (4th Cir. 2006). Courts must now walk the line between documentation of plea offers and unnecessary and unwarranted intrusion into the plea bargaining process.

## Conclusion

The lessons of *Frye* and *Cooper* seem simple on their face: Defense counsel must convey all plea offers to a client and then provide adequate advice as to whether to accept such offers.

However, as the Supreme Court recognized in these recent decisions, this simple rule will not always be easily enforced. Plea bargaining is more of an art than a science; there is no "one way" to cut the perfect deal.

Like it or not, the plea-bargaining process will continue. Defense lawyers have a Sixth Amendment duty to professionally advise their clients with respect to such negotiations. However, everyone in the criminal justice system, including the judge, must now keep track of what pleas are being made and whether the defendant has been adequately counseled about the advisability of the plea deal. The plea-bargaining process may be distasteful and a nuisance, but it is also a reality. Today's "justice" comes with plenty of strings attached.

COPYRIGHT © 2012 BY THE BUREAU OF NATIONAL AFFAIRS, INC.    CRL    ISSN 0011-1341

# ATTACHMENT - B -

GAB

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED IN OPEN COURT

JUL 2 9 2010

CHARLES R. DIARD, JR.
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal No. 10-00179-CB |
| | * | USAO No. 10R00251 |
| v. | * | Violations: |
| | * | 21 USC § 846 |
| BLADIMIR RIASCOS ARBODELA, | * | 21 USC § 841(a)(1) |
| aka WIGBERTO LEBRON | * | 21 USC § 853 |
| ORTIZ, | * | |
| aka JOSE LUIS RIVERA | * | |
| GARCIA, and | * | |
| LUZ MARIA BURTON | * | |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE

From in or about early 2009, to and continuing through on or about June 11, 2010, in the

Southern District of Alabama, the defendant,

**BLADIMIR RIASCOS ARBODELA,**
**aka WIGBERTO LABRON ORTIZ,**
**aka JOSE LUIS RIVERA GARCIA, and**
**LUZ MARIA BURTON**

did knowingly and willfully conspire with each other and with other persons, both known and

unknown to the Grand Jury, to possess with intent to distribute more than 5 kilograms of cocaine,

a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

In violation of Title 21, United States Code, Section 846 and Title 18, United States

Code, Section 2.

The amount of cocaine involved in the conspiracy exceeds 5 kilograms; therefore, the

defendants are subject to the penalty provisions of Title 21, United States Code, Section

841(b)(1)(A).

1

## COUNT TWO

In or about late November, 2009, in the Southern District of Alabama, the defendant,

**BLADIMIR RIASCOS ARBODELA,**
**aka WIGBERTO LABRON ORTIZ,**
**aka JOSE LUIS RIVERA GARCIA,**

did knowingly and wilfully possess with intent to distribute approximately two kilograms of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The amount of cocaine involved in this offense exceeds 500 grams; therefore, the defendant is subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B).

## COUNT THREE

On or about June 11, 2010, in the Southern District of Alabama, the defendant,

**BLADIMIR RIASCOS ARBODELA,**
**aka WIGBERTO LABRON ORTIZ,**
**aka JOSE LUIS RIVERA GARCIA, and**
**LUZ MARIA BURTON**

did knowingly and wilfully possess with intent to distribute approximately 578 grams of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The amount of cocaine involved in this offense exceeds 500 grams; therefore, the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A).

## COUNT FOUR

On or about June 11, 2010, in the Southern District of Alabama, the defendant,

**BLADIMIR RIASCOS ARBODELA,**
**aka WIGBERTO LABRON ORTIZ,**
**aka JOSE LUIS RIVERA GARCIA, and**
**LUZ MARIA BURTON**

did knowingly and wilfully possess with intent to distribute approximately 18 grams of a mxiture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

The amount of crack cocaine involved in this offense exceeds 5 grams; therefore, the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B).

## FORFEITURE ALLEGATION

In committing the felony offenses alleged in Counts One through Four, which is punishable by imprisonment for more than one year,

**BLADIMIR RIASCOS ARBODELA,**
**aka WIGBERTO LABRON ORTIZ,**
**aka JOSE LUIS RIVERA GARCIA, and**
**LUZ MARIA BURTON**

used or intended to use certain property in any manner or part to commit or to facilitate the commission of such violation or violations. The United States is entitled to forfeiture of any such property constituting or derived from any proceeds the defendants obtained, directly or indirectly as the result of such violation; any such property of the defendants used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

If any of the property which is subject to forfeiture, as a result of any act of omission of the defendants, cannot be located upon the exercise of due diligence; has been transferred to, sold to, or deposited with a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty; by virtue of the commission of Counts One through Four hereinabove

3

by the defendants, any and all interest the defendant has in the above-described property is vested in the United States and is hereby forfeited to the United States.

In accordance with Title 21, United States Code, Section 853.

A TRUE BILL,

_Gary L. Sill_

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

KENYEN R. BROWN
UNITED STATES ATTORNEY
by:

_Gloria A. Bedwell_
Gloria A. Bedwell
Assistant United States Attorney

_Maria E. Murphy_
Maria E. Murphy
Assistant United States Attorney
Chief, Criminal Division

JULY 2010

# ATTACHMENT- c -

# BNA Insights

## Supreme Court's Rulings on Ineffective Assistance at Plea Bargaining Stage Call for New Efforts by Not Only Defense Counsel but Also Prosecutors and Judges



By Laurie L. Levenson

It is a big year for U.S. Supreme Court cases. Health care, affirmative action, GPS devices, strip searches—the court selected many of the hot-button issues to decide this term. Among the most important cases are *Missouri v. Frye*, 2012 BL 67235 (U.S. 3/21/2012), and *Lafler v. Cooper*, BL 67236 (U.S. 3/21/2012). In these opinions, the court recognized that plea bargaining lies at the heart of the way that the current criminal justice system operates. Thus, the court's decision to set standards for defense counsel's assistance during plea bargaining has the potential to dramatically affect how plea bargaining is handled in this country.

Plea bargains are the lifeblood of the American criminal justice system. Current studies suggest that up to 95 percent of all cases are resolved by plea bargaining. Yet, courts rarely monitor what occurs during the plea-bargaining process. Practices vary tremendously. From extensive negotiations with formal, written plea-agreement contracts to a process most resembling horse-trading in arraignment courts, defendants' fates are resolved by lawyers deciding, with only minimal input by the client, how cases should be resolved. With the focus on efficiently and expeditiously resolving

Laurie L. Levenson is professor of law and holds the David W. Burcham Chair in Ethical Advocacy at Loyola Law School, Los Angeles.

cases, defendants—especially those least educated and sophisticated—often get left in a fog.

In his opinions in *Frye* and *Cooper*, Justice Anthony M. Kennedy tried to change that dynamic by holding that the minimum standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), also apply to plea bargaining by counsel. Yet, as even Kennedy had to admit, a standard established to judge counsel's performance at trial or in preparing for trial is less than a perfect fit for the plea-bargaining process.

First, it is important to look at exactly what the court decided in this pair of 5-4 opinions. Then one must consider the likely practical impact on defense lawyers, prosecutors, and judges.

### Missouri v. Frye: 'Thou Shalt Communicate With Your Client!'

In *Frye*, Galin Frye was charged with driving with a revoked license. Because this was his fourth violation, he was charged under Missouri law with a felony that carried a maximum four-year prison term. The prosecutor sent Frye's lawyer a letter offering to reduce the charge to a misdemeanor and to recommend a 90-day sentence if Frye would plead guilty. Frye's lawyer never conveyed the offer to Frye, and the offer expired. Right before Frye's preliminary hearing, he was arrested again for the same offense. Frye ended up pleading guilty with no underlying plea agreement and was sentenced to three years in prison.

On habeas corpus review, Frye claimed his Sixth Amendment right to effective assistance of counsel was violated because his counsel failed to inform him of the prosecution's plea offer and he would have accepted the offer if he had known about it. The first hurdle Frye had to overcome in making his claim was to convince the court that he had a right to effective assistance of counsel at the plea-bargaining stage, given that the Supreme Court has never recognized a constitutional right to plea bargaining. Yet the majority in *Frye* had little trouble recognizing plea bargaining as a "critical stage" at which the Sixth Amendment guaranteed the defendant the right to counsel.

Extrapolating from the court's opinion in *Hill v. Lockhart*, 474 U.S. 52 (1985) and its more recent decision in *Padilla v. Kentucky*, 2010 BL 70791 (U.S. 2010), Kennedy held that the Sixth Amendment guaranteed Frye the right to effective assistance of counsel during

plea bargaining. Neither *Hill* nor *Padilla* was directly on point because they focused more on whether counsel's misadvice negated their clients' guilty pleas. In *Hill*, defense counsel misinformed the defendant of the amount of time he would have to serve before he became eligible for parole. In *Padilla*, the court set aside a plea because defense counsel misinformed the defendant of the immigration consequences of the conviction. Yet the language from these cases became critical to the task of finding a general duty of effective assistance of counsel in plea bargaining. In particular, Kennedy focused on the court's statement in *Padilla* that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."

Although Kennedy recognized that there is a difference between invalidating a plea because bad advice was given regarding the guilty plea and the situation in *Frye*, where the challenge was to defense counsel's conduct during plea bargaining before the plea proceedings, he found that the differences were not constitutionally significant. More important, he was convinced that the "simple reality" of our criminal justice system made it imperative for the court to include counsel's conduct during plea bargaining within the Sixth Amendment's umbrella. As Kennedy noted, 97 percent of federal convictions and 94 percent of state convictions are the result of guilty pleas. "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities that must be met in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages," he stated.

Yet, recognizing the right to effective assistance of counsel during plea bargaining was just step No. 1 in the court's analysis. The more challenging task was defining what standards should be used in measuring whether counsel has met its Sixth Amendment requirements. Pursuant to the ineffective assistance of counsel standard set forth in *Strickland*, a defendant must demonstrate that counsel's representation fell below professional standards. While it may not be possible to identify exact standards for how counsel should act during plea bargaining, the minimum requirements are not that difficult to identify.

The most basic requirement is that a lawyer must actually communicate the terms of a formal plea offer to the client. Especially when there is an offer with an expiration date, defense counsel must let the client consider the offer before it expires. This is not a new concept. The American Bar Association Standards for Criminal Justice and many states' professional standards require counsel to promptly communicate and explain plea offers to a client. See ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(a) (3d ed. 1999).

Step No. 2 of the *Strickland* analysis, as applied to plea bargaining, is a little more challenging. How does a defendant show that counsel's ineffective assistance during plea bargaining prejudiced his or her case? Here, the court held that to establish prejudice, Frye would have to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." If it is an offer, like that in *Frye*, that could be withdrawn by the prosecution or

rejected by the court, the defendant must show that the offer would have remained and that he would have received the benefit of the plea bargain.

Despite the many "ifs" in the court's standard, the majority felt confident that on remand these issues could be resolved. In fact, the court suggested that Frye might not be able to meet the standard given that he picked up a new charge for driving without a license shortly before his plea, which quite likely might have led the prosecution to withdraw its offer or have prompted the trial court to reject it. Nonetheless, Frye should have an opportunity to demonstrate whether his case was prejudiced.

Justice Antonin Scalia wrote for the four dissenters, who objected to the majority's decision on the most basic level. As the dissent states, "The plea-bargaining process is a subject worthy of regulation, since it is the means by which most criminal convictions are obtained. It happens not to be, however, a subject covered by the Sixth Amendment, which is concerned not with the fairness of plea bargaining but with the fairness of conviction." Frye never argued that he was not guilty of the offense to which he pleaded guilty. His conviction was fair, even though he might have hoped for a more favorable resolution of the case.

## Lafler v. Cooper: 'Thou Shalt Give Your Client Accurate Information in Deciding Whether to Accept a Plea Bargain'

In the companion case of *Lafler v. Cooper*, Kennedy again wrote for the majority. While this was another case involving plea bargaining, the misstep by defense counsel was different.

Anthony Cooper was charged with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in commission of a felony, misdemeanor possession of marijuana and for being a habitual offender. Evidently Cooper, a convicted felon, pointed a gun and shot at his victim's head. The shot missed and the victim ran. Cooper shot again and hit her in the buttocks, hip, and abdomen. She survived the shots.

Prosecutors twice offered to dismiss two of the charges and recommend a sentence of 51 to 85 months for the other charges. Defendant admitted his guilt in communications with the court and expressed a willingness to accept the offer. However, he changed his mind when his lawyer convinced him that the prosecution would be unable to establish intent to murder the victim because she had been shot below the waist. Cooper ended up going to trial, rejecting yet another plea offer on the first day of trial. He was convicted by a jury and received a mandatory minimum sentence of 185 to 360 months' imprisonment, more than three times what he would had received if he had accepted the prosecution's initial plea offer.

Using the analytic structure established in *Frye* and *Strickland*, the Supreme Court held that counsel's advice constituted ineffective assistance of counsel. First, the parties conceded that counsel's performance was deficient. No competent counsel would have believed that Cooper could not be found to have the intent to murder simply because his shots had hit the victim below the waist. Second, the court held that, but for counsel's deficient performance, there was a reasonable

COPYRIGHT © 2012 BY THE BUREAU OF NATIONAL AFFAIRS, INC.    CRL    ISSN 0011-1341

probability that he and the trial court would have accepted the guilty plea. His letters to the court and testimony at a post-conviction hearing established that fact.

The real issue was what the remedy should be. How could Cooper be made whole at this point? The Supreme Court held that the proper remedy was to order the state to reoffer the plea bargain.

While raising issues similar to those in *Frye, Cooper* added another dimension to the court's decision to recognize a right to effective assistance of counsel during plea bargaining. Cooper's case was not like that of *Hill*, in which the court had held that improper advice by counsel could invalidate a guilty plea. Cooper went to trial. He did not argue that he received an unfair trial. Rather, he relied on a yet-to-be-recognized right to accept a plea bargain.

In the end, the court found the distinction to be without a difference. The defendant's fair trial did not wipe clean his lawyer's deficiencies. With plea bargaining such a critical aspect of the criminal justice system, saying that a fair trial makes up for any deficiencies in counsel's conduct during the pretrial process ignores the reality of the substantial effect plea bargaining can have on a defendant's future.

The dissent was even more vociferous in *Cooper* than it had been in *Frye.* Writing for the dissenters, Scalia lamented the creation of a "whole new field of constitutionalized criminal procedure: plea-bargaining law." He warned that there are many more dimensions of plea bargaining that will have to be addressed and that, although the two cases this term focused on defense counsel's behavior, the next ones down the road may inevitably try to establish "constitutional" rules regarding prosecutors' behavior in the criminal justice system.

For the dissenters, a defendant's constitutional rights are about whether the defendant received a full and fair trial. Since Cooper received such a trial, he had no constitutional right to a plea bargain. Moreover, the court's remedy that the prosecution reoffer its original plea offer constituted undue interference with the criminal justice process, they said. Plea bargaining may be in great use in the United States, but it is at best "a necessary evil" and "embarrassing adjunct" to our criminal justice system, according to Scalia. By recognizing the right to effective assistance of counsel at plea bargaining, the court had shifted to making plea bargaining "the criminal justice system."

In language that is the trademark of Scalia, he wrote:

> The Court today embraces the sporting-chance theory of criminal law, in which the State functions like a conscientious casino-operator, giving each player a fair chance to beat the house, that is, to serve less time than the law says he deserves. And when a player is excluded from the tables, his *constitutional rights* have been violated. I do not subscribe to that theory. No one should, least of all the Justices of the Supreme Court.

The other dissenters did not join in this part of his opinion, but his point was clear. The Constitution guarantees the right to a fair trial, and nothing that happens in the plea-bargaining process undermines that right.

In his separate, solo dissent, Justice Samuel A. Alito Jr. focused on an evident weakness in the majority's decision. The majority left implementation of the remedy to the trial court. Is it fair after the prosecution goes to trial to require it to vacate some of the convictions?

Alito wondered. How will courts decide what to do when, years after a conviction, there is an allegation that the defendant received ineffective assistance of counsel during the plea-bargaining process? It is well and good for the court to say that it leaves the issue to the "discretion of the trial court," but there is very little guidance about how judges should exercise that discretion, he said.

## Aftermath of Frye and Cooper: What Do We Do Now?

How are *Frye* and *Cooper* likely to change the actions of defense counsel, prosecutors, and the courts? The court's decisions in these cases are likely to have a significant practical impact on plea bargaining practices across the nation.

**Defense Counsel's Responsibilities.** First, defense lawyers must do what they should have been doing all along. They need to talk to their clients and give them accurate advice. This may sound easy, but in the quick-moving, rough-and-tumble world of plea bargaining, it is not always easy for counsel to have in-depth discussions about all the prosecution's offers. Often, their clients cannot be reached by simply picking up the phone. Defense lawyers must go through elaborate processes to visit clients in jail and, even then, the conditions are less than optimal for having full conferences regarding plea offers.

Second, defense counsel must keep clear records of not only the offers prosecutors present but also their expiration dates, how likely they are to be withdrawn, how and when the offers were presented to the client, and what changes are made in the offers. Of course, many lawyers already do this, but the Supreme Court's decisions will make the lawyer's recordkeeping key evidence in any post-plea or post-trial hearings.

Third, defense counsel should probably give every indication to the prosecution that a defendant is likely to accept an offer, even if counsel is unsure, so that the record remains strong for subsequent proceedings. Therefore, it might be more difficult for defense counsel to be as candid with prosecutors as to the likelihood of a defendant accepting a plea offer because telling a prosecutor straight out that a client does not seem so inclined may later hurt the defendant's chances at post-conviction relief.

Finally, defense counsel must consider every plea bargain to be as important as a trial. This is not necessarily a bad thing. Certainly a defendant pleading guilty would expect such a commitment by defense counsel. Yet, for defense lawyers, pleas have long taken a back seat to trial preparation. Given the court's decisions, this can no longer be the case.

**Prosecutors' Responsibilities.** Prosecutors will also find themselves with newfound responsibilities after *Frye* and *Cooper.* To ensure that a defendant will not be able to win reversal of his conviction years down the line, prosecutors should document all plea offers, their expiration dates, the conditions under which they will be withdrawn, and whether they are binding on the court. Then, the prudent prosecutor may ask for written confirmation that the offer has been shared with the client. Undoubtedly prosecutors' offices will start developing signed notice forms that can be used to document plea offers.

Prosecutors should also ask the court to put on the record before a trial whether there were any plea offers and that the defendant rejected the offer. The complication with this is that judges, at least in the federal system, should not be involved in plea bargaining. One must be concerned how even this effort might subtly involve the judge in plea discussions. Thus, it may be necessary to have the defendant verify that a plea offer was made but have the written terms of that plea offer lodged with the court under seal.

Finally, prosecutors might find themselves in the awkward position of having the court inquire whether defense counsel has not only shared a plea offer but has adequately answered the defendant's questions regarding the process and applicable law that would affect his decision whether to accept the offer.

The plea-bargaining process, which is intended to make the criminal justice process more expeditious, may need to be slowed down to accommodate the new procedures that will ensure effective assistance of counsel during plea bargaining.

**Judges' Responsibilities.** Ultimately, the responsibility will fall on judges to ensure that defense counsel adequately participates in the plea-bargaining process. This is true regardless of whether the case ends in a guilty plea or with a trial. A prudent judge will now ask the parties and counsel whether there were any plea offers and whether their terms were communicated to the defendant. Moreover, the judge may also ask counsel to put on the record, in camera or in open court, why a defendant is declining a plea offer.

The judge must take these steps without interfering with the attorney-client relationship. Defense counsel may be privy to additional information demonstrating why a defendant should not accept the deal, but the judge is not necessarily entitled to have all this information. Judges must also resist the temptation to second-guess defense counsel's strategy in counseling a client

to reject a plea offer. As in *Strickland*, great deference should be afforded to the decisions of defense counsel. While the court may view a plea offer as too good to refuse, defense counsel may have strategic reasons to suggest that the defendant reject a specific plea offer.

Finally, the court must maintain its role as an impartial decision maker and resist any temptation to be drawn into the actual plea negotiations. Pursuant to Fed. R. Crim. P. 11(c) (1), "The court must not participate in [plea agreement] discussions." To preserve the court's impartiality and avoid putting undue pressure on a defendant to accept a plea deal, the rules specifically prohibit judges from participating in plea bargaining. See *United States v. Bradley*, 455 F.3d 453 (4th Cir. 2006). Courts must now walk the line between documentation of plea offers and unnecessary and unwarranted intrusion into the plea bargaining process.

## Conclusion

The lessons of *Frye* and *Cooper* seem simple on their face: Defense counsel must convey all plea offers to a client and then provide adequate advice as to whether to accept such offers.

However, as the Supreme Court recognized in these recent decisions, this simple rule will not always be easily enforced. Plea bargaining is more of an art than a science; there is no "one way" to cut the perfect deal.

Like it or not, the plea-bargaining process will continue. Defense lawyers have a Sixth Amendment duty to professionally advise their clients with respect to such negotiations. However, everyone in the criminal justice system, including the judge, must now keep track of what pleas are being made and whether the defendant has been adequately counseled about the advisability of the plea deal. The plea-bargaining process may be distasteful and a nuisance, but it is also a reality. Today's "justice" comes with plenty of strings attached.

COPYRIGHT © 2012 BY THE BUREAU OF NATIONAL AFFAIRS, INC. CRL ISSN 0011-1341

# ATTACHMENT- D -

AO 245B (Rev. 06/05) Judgment in a Criminal Case:  Sheet 1          (7435)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**V.** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987) |
| **BLADIMIR RIASCOS ARBODELA**<br>a/k/a Wigberto Lebron Ortiz,<br>a/k/a Jose Luis Rivera Garcia<br>**THE DEFENDANT:** | CASE NUMBER: **1:10-CR-00179-001**<br>USM NUMBER: **08744-003** |
| | Latisha V. Colvin, Esquire<br>**Defendant's Attorney** |

☒ pleaded guilty to count <u>1 of the Indictment on 9/23/2010</u>.
☐ pleaded nolo contendere to count(s) __ which was accepted by the court.
☐ was found guilty on count(s) __ after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense:

| Title & Section | Nature of Offense | Date Offense Concluded | Count No. |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to possess with intent to distribute cocaine. | 06/11/2010 | 1 |

The defendant is sentenced as provided in pages 2 through  6  of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) __.
☒ Counts  2,3 & 4  are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

December 22, 2011
Date of Imposition of Judgment

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

December 27, 2011
Date

Judgment 2

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 2 - Imprisonment
_____
Defendant: **BLADIMIR RIASCOS ARBODELA, a/k/a Wigberto Lebron Ortiz, a/k/a Jose Luis Rivera Garcia**
Case Number: **1:10-CR-00179-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>EIGHTY (80) MONTHS</u>

    ☐  <u>Special Conditions:</u>

    ☒  The court makes the following recommendations to the Bureau of Prisons: **That the defendant be imprisoned at an institution where a residential, comprehensive, substance abuse treatment program is available.**

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:
    ☐  at _____ a.m./p.m. on _____.
    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☐  before 2 p.m. on _____.
    ☐  as notified by the United States Marshal.
    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____
_____
_____

Defendant delivered on _9-6-12_ to _____PET_____ at ___10:00 AM___

with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____F B C P_____
Deputy U.S. Marshal

Judgment 3

AO 245B (Rev. 06/05) Judgment in a Criminal Case; Sheet 3 - Supervised Release

Defendant: **BLADIMIR RIASCOS ARBODELA**, a/k/a Wigberto Lebron Ortiz, a/k/a Jose Luis Rivera Garcia

Case Number: **1:10-CR-00179-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of <u>8 years</u>.

☒ **Special Conditions:  Immediately after incarceration, the defendant is to be delivered to a duly-authorized Immigration official for deportation consideration.  If deported, the defendant is to remain outside the United States pursuant to 18 U.S.C. §3583(d).  If not deported, within 72 hours of release from custody of the Bureau of Prisons or Immigration authorities, the defendant shall report in person to the Probation Office in the district to which he is released, and shall abide by their instructions, to include participation in a program of testing and treatment for drug and/or alcohol abuse as directed by the Probation Office.**

> *For offenses committed on or after September 13, 1994:*   The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐   The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable)

☒   **The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.**

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.  The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

**The defendant shall not commit another federal, state or local crime.**
**The defendant shall not illegally possess a controlled substance.**
**The defendant shall comply with the standard conditions that have been adopted by this court (Probation Form 7a).**
**The defendant shall also comply with the additional conditions on the attached page (if applicable).**

------

### See Page 4 for the
## "STANDARD CONDITIONS OF SUPERVISION"

Judgment 4

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 3 - Supervised Release
Defendant: **BLADIMIR RIASCOS ARBODELA, a/k/a Wigberto Lebron Ortiz, a/k/a Jose Luis Rivera Garcia**
Case Number: **1:10-CR-00179-001**

# SUPERVISED RELEASE

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third-parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;

14) the defendant shall cooperate, as directed by the probation officer, in the collection of DNA, if applicable, under the provisions of 18 U.S.C. §§ 3563(a)(9) and 3583(d) for those defendants convicted of qualifying offenses.

AO 245B (Rev. 06/05) Judgment in a Criminal Case: Sheet 5, Part A - Criminal Monetary Penalties

Defendant: **BLADIMIR RIASCOS ARBODELA, a/k/a Wigberto Lebron Ortiz, a/k/a Jose Luis Rivera Garcia**

Case Number: **1:10-CR-00179-001**

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $100.00 | $ | $ |

☐    The determination of restitution is deferred until _____. An Amended Judgment in a Criminal Case (AO 245C) will be entered after such a determination.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below. (or see attached) However, pursuant to 18 U.S.C. § 3644(i), all non-federal victims must be paid in full prior to the United States receiving payment.

☐    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

| Name(s) and Address(es) of Payee(s) | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or % of Payment |
|---|---|---|---|
| | | | |
| TOTALS: | $ | $ | |

☐    If applicable, restitution amount ordered pursuant to plea agreement.  $
☐    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:
☐    The interest requirement is waived for the ☐ fine and/or ☐ restitution.
☐    The interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____     _____
Defendant                                              Date


_____     _____
U.S. Probation Officer/Designated Witness        Date

Defendant's Name:    BLADIMIR RIASCOS ARBODELA a/k/a Wigberto Lebron Ortiz,
                     a/k/a Jose Luis Rivera Garcia

Docket No.:    CR 10-00179-001

## SPECIAL CONDITIONS OF SUPERVISION

THE SPECIAL CONDITIONS ORDERED BY THE COURT ARE AS FOLLOWS:
(STANDING ORDER NUMBER:      29    , AS AMENDED MAY 14, 2002.

The special conditions ordered by the Court are as follows:

[ X ]    **DRUG SURVEILLANCE:** The defendant shall submit to periodic urine surveillance and/or breath, saliva and skin tests for the detection of drug abuse as directed by the probation officer.   The defendant may incur costs associated with such detection efforts, based on ability to pay as determined by the probation officer.

[ X ]    **DRUG TREATMENT:** The defendant shall participate in a program, inpatient or outpatient, for the treatment of drug and/or alcohol addiction, dependency or abuse which may include, but not be limited to urine, breath, saliva and skin testing to determine whether the defendant has reverted to the use of drugs and/or alcohol.   Further, the defendant shall participate as instructed and as deemed necessary by the probation officer and shall comply with all rules and regulations of the treatment agency until discharged by the Program Director with the approval of the probation officer.   The defendant shall further submit to such drug-detection techniques, in addition to those performed by the treatment agency, as directed by the probation officer.   The defendant may incur costs associated with such drug/alcohol detection and treatment, based on ability to pay as determined by the probation officer.

[   ]    **COMMUNITY CONFINEMENT:** The defendant is required to participate in a community treatment center, halfway house or similar facility for a period of _____ months, beginning at or at a time determined by the probation officer.

[   ]    **HOME CONFINEMENT WITH LOCATION MONITORING:**   The defendant shall participate in the Location Monitoring Program for a period not to exceed * months.   During this time, the defendant shall remain at his/her place of residence at all times and shall not leave except when such leave is approved in advance by the U.S. Probation Office.   The defendant shall be monitored by a form of location monitoring as determined by the Probation Office. The defendant shall comply with location monitoring procedures specified by the Probation Office and abide by all associated technology requirements.   The Court orders/does not order that the defendant pay the costs associated with such monitoring.

[   ]    **COMMUNITY SERVICE:** The defendant is required to perform _____ hours of community service work at a rate of _____ hours per month as approved by the probation officer to be completed by _____.

[   ]    **MENTAL HEALTH:** The defendant is required to participate in a mental health treatment program as deemed necessary and approved by the probation officer.   The defendant may incur costs associated with such program, based on ability to pay as determined by the probation officer.

⇔08744-003⇔
Jose Garcia
P.O.Box 1000
Petersburg, VA 23804
United States



U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

UNITED STATES POSTAGE

PITNEY BOWES

02 1M
0004212956
$ 00.00⁰
OCT 03 2012
MAILED FROM ZIP CODE 23860



PRIORITY MAIL®

UNITED STATES POSTAL SERVICE

Visit us at usps.com

⇔08744-003⇔
Court Us District
113 Saint Joseph ST
Mobile, AL 36602
United States