IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BLADIMIR RIASCOS ARBODELA,    *
                              *
              Petitioner,     *
v.                            *  CRIMINAL NO. 10-00179-CG
                              *  CIVIL ACTION NO. 12-00648-CG-B
UNITED STATES OF AMERICA,     *
                              *
              Respondent.     *

REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Bladimir Arbodela's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C.

§ 2255 (Doc. 115), and the Government's response in opposition

thereto. (Doc. 122). This action was referred to the

undersigned Magistrate Judge for report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules

Governing Section 2255 Cases and is now ready for consideration.[1]

Because the record is adequate to dispose of this matter, no

evidentiary hearing is required[2]. Having carefully reviewed the

_____

[1] The Honorable United States District Judge Callie V.S. Granade
presided over the guilty plea proceeding during which Arbodela
pled guilty to Count One of the indictment. Judge Granade also
presided over the sentencing, which was conducted on December
22, 2011. This matter has been referred to the undersigned
Magistrate Judge for entry of a Report and Recommendation. The
undersigned has reviewed Arbodela's motion and related documents
and all other relevant documents in the Court's file and has
fully familiarized herself with the proceedings before Judge
Granade. Based upon that review, the undersigned makes the
following report and recommendation.

[2] A district court is not required to hold an evidentiary hearing
every time a § 2255 petitioner simply asserts a claim of

record, it is recommended that Arbodela's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Bladimar Arbodela.

## I.  BACKGROUND

In July 2010, Arbodela was charged with conspiracy to possess with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 846 (count one), possession with intent to distribute cocaine in violation of 2 U.S.C. § 841(a)(1) (counts two and three) and possession with intent to distribute 18 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count four). (Doc. 1). Arbodela was appointed counsel and arraigned on the charges. (Docs. 16, 18). On September 2, 2010, the Government filed an Information advising that due to Arbodela's prior felony drug conviction, he was subject to enhanced penalties provisions contained in 21 U.S.C. §§ 851 and 841(b)(1)(A),(B) and (C). (Doc. 25)[3]. Shortly

_____

ineffective assistance of counsel. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.")(citation omitted).

[3] The record reflects that Arbodela was previously convicted in this Court of conspiracy to possess with intent to distribute

thereafter, on September 21, 2010, Arbodela entered into a negotiated plea agreement with the Government. (Doc. 39-1). In the plea agreement, the parties agreed that Arbodela was involved in excess of 500 grams of cocaine, and that he would be subject to the statutory penalties prescribed in 21 U.S.C. § 841(b)(B) rather than those prescribed in the indictment. (Id.).

The plea agreement also provided, in relevant part, as follows:

**PENALTY**

11. The maximum penalty the Court could impose as to Count 1 of the Indictment is:

    a. 10 years to life imprisonment;

    b. A fine not to exceed $1,000,000.00 dollars;

    c. A term of supervised release of 8 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00.

...

**LIMITED WAIVER OF RIGHT TO APPEAL**
**AND WAIVER OF COLLATERAL ATTACK**

21. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waves the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or

---

cocaine. See 04-00147-CB. Thus, he was subject to the enhanced penalties set forth in 21 U.S.C. § 841.

correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.

  a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

   (1) any sentence imposed in excess of the statutory maximum;

   (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

(Id., at 3, 10-11).

Appearing before Arbodela's signature line on page 12 of the Agreement is this paragraph:

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and have voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved to same beyond a reasonable doubt.

(Id., at 12).

On September 23, 2010, the Court conducted a plea colloquy pursuant to Fed. R. Crim. P. 11(b). (Docs. 46, 139). Arbodela was represented by counsel and testified, under oath, that he understood each of the rights set forth in the plea agreement. (Doc. 139 at 7). Upon questioning, Arbodela acknowledged that

the facts asserted were true and were sufficient for a jury to find him guilty of count one as charged in the indictment. Arbodela also acknowledged that he had read and understood the plea agreement, and that he had reviewed it with his attorney. (Id.). He further acknowledged that he understood that if he pleaded guilty, he might lose valuable civil rights and benefits, and could face possible deportation. (Id., at 9). In addition, acknowledged that if convicted of count one, the maximum the court could impose was a minimum of 10 years to life, a fine not to exceed one million, a supervised release term up to eight years, and a mandatory special assessment of $100. (Id., at 10-11). When questioned regarding the voluntariness of his plea, and whether any promises had been made to him apart from what was contained in the plea agreement, Arbodela acknowledged that his plea was voluntary and that no promises apart from the agreement had been made to him. (Id., at 7). The Court found that Arbodela's plea was made knowingly, feely, and voluntarily, and that the facts admitted by him were sufficient to support the plea. Accordingly, the Court adjudicated Arbodela guilty of count one, and the remaining counts were dismissed. (Id., at 18).

The record shows that the Presentence Investigation Report ("PSR") calculated a Total Offense Level of 33, a Criminal

History Category of IV and a resulting guideline range of 188 to 235[4]. (Doc. 99 at 11, 17). The Government petitioned the Court pursuant to 5k1.1 of the U.S. Sentencing Guidelines and 18 U.S.C. § 3553(e) for a downward departure of Arbodela's sentence based on the substantial assistance he provided. (Docs. 98 at 141). Specifically, the Government requested a departure from the low-end guideline range of 188 to a low-end range of 94. (Id.). At the sentencing hearing conducted on December 22, 2011, the Court announced a sentence of 80 months' imprisonment as to count one and 8 years of supervised release[5]. (Doc. 141 at 10-11.). Arbodela did not appeal his conviction or sentence.

Arbodela signed and placed the instant *pro se* § 2255 motion with prison officials for mailing on October 2, 2012. (Doc. 115

---

[4] The PSR, which was adopted by the Court, reflects that Arbodela was involved with the distribution of at least 53.578 kilograms of cocaine and 8.42 grams of crack cocaine, for a total marijuana equivalency of 10,745.66 kilograms. (Doc. 99 at 10-11). This resulted in a base offense level of 36 pursuant to U.S.S.G. §2D1.1(c)(2). Arbodela received a 3 point deduction for acceptance of responsibility under U.S.S.G. §3E.1(a) and (b) thus resulting in a total offense level of 33.

[5] Arbodela was also before Judge Granade on a petition for revocation of his supervised release in Case No. CR 04-00147. The Court found that Arbodela violated the terms of his supervised release and sentenced him to a term of 33 months' imprisonment, which was to run consecutive to the sentence imposed in the instant case. Arbodela did not appeal that sentence and his 2255 petition does not raise any issue with respect to the revocation of his supervised release and the sentence imposed. (Doc. 141 at 13-15).

at 20). Arbodela's motion is not the model of clarity, however, as best the Court can discern, he appears to raise the following grounds for relief: 1) the indictment contained a jurisdictional defect because it does not contain all the essential elements of the offense charged; namely, the specific drug amount of 280 grams of cocaine, (Doc. 115 at 8, 9-10, 15-16), 2) defense counsel was ineffective because she failed to inform him of the potential deportation consequences of his guilty plea (Doc. 115 at 4), 3) defense counsel was ineffective for advising him against taking a plea offer involving 280 grams of cocaine without enhancement (Doc. 115 at 5, 23-24), and 4)defense counsel was ineffective for not securing his family's participation in a witness protection program (Doc. 115 at 5)[6].

## II. **DISCUSSION**

The limited scope of habeas relief is well established, as this Court has recognized:

---

[6] On the 2255 form, Arbodela asserts in two spaces that his defense counsel "failed all Ground to appeal the sentence"; however, nowhere in his 59 pages of rambling assertions does Arbodela develop this argument nor offer any facts to explain or support his assertion. Because he has not developed this argument, he is deemed to have abandoned it. Johnson v. Razdan, 2014 U.S. App. LEXIS 8152, 2014 WL 1689021 at *2 (11th Cir. Apr. 30, 2014) ("Although *pro se* briefs are to be construed liberally, a pro se litigant who offers no substantive argument on an issue in his initial brief abandons that issue on appeal."); Timson v. Sampson, 518 F.3d 870, 874 (while *pro se* briefs are construed liberally, issues not briefed on appeal are deemed abandoned.)

Collateral relief is an extraordinary remedy
which "may not do service for a [ ] [direct]
appeal." United States v. Frady, 456 U.S. 152, 165,
102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also
Lynn v. United States, 365 F.3d 1225, 1232 (11th
Cir. 2004) ("Courts have long and consistently
affirmed that a collateral challenge, such as a §
2255 motion, may not be a surrogate for a direct
appeal."). A defendant who has waived or exhausted
his right to appeal is presumed to stand "fairly
and finally convicted." Frady, 456 U.S. at 164.
Unless a claim alleges a lack of jurisdiction or
constitutional error, the scope of collateral
attack has remained extremely limited. United
States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct.
2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f
issues are raised and considered on direct appeal,
a defendant is thereafter precluded from urging the
same issues in a later collateral attack. ... A
defendant is, of course, entitled to a hearing of
his claims, but not to duplicate hearings. The
appellate process does not permit reruns." Moore v.
United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, *8-9 (S.D.
Ala. August 4, 2008) (quotation marks in original).

In his first claim, Arbodela argues that the court was
without jurisdiction to impose his sentence because the
indictment contained a "jurisdictional defect". (Doc. 115 at 8,
10). The gist of Arbodela's argument appears to be that the
indictment was defective because it does not contain a specific
amount of drugs, namely 280 grams; thus, it lacks an essential
element, and it fails to reference 841 U.S.C. § 841(b).

The undersigned observes, as a preliminary matter, "[a]
jurisdictional defect is one that strips the court of its power

to act and makes its judgment void." <u>McCoy v. United States</u>, 266 F.3d 1245, 1249 (11th Cir. 2011).  In <u>United States v. Cotton</u>, 535 U.S. 625, 627-28, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002), the Supreme Court made clear that omissions in an indictment which fail to include an essential element do not deprive a court of its power to adjudicate a case; thus, are not jurisdictional. 535 U.S. at 631; <u>United States v. Maldenaldo Sanchez</u>, 269 F.3d 1250, 1273-75 (11th Cir. 2001), <u>abrogated in part on other grounds by</u> United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir. 2005) (Eleventh Circuit held that even though the indictment failed to allege an element of the charged offense, namely the drug-quantity element, such did not constitute a jurisdictional defect that deprived the Court of the power to adjudicate the case).  Thus, Arbodela's assertion that lack of a drug quantity in the indictment deprived this court of jurisdiction is without merit.

Further, §841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).  §846 provides that "any person who attempts or conspires to commit any offense defined in this subchapter [including § 841(a)] shall be subject to the same penalties as

those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Together, these statutes provide that a person may violate § 846 by conspiring to violate §841(a)(1). For purposes of a conviction under §846, neither the type of drug nor the quantity of that drug is an element of the offense of conspiracy to violate § 841(a)(1). United States v. Carson 520 Fed. App'x 874 (llth Cir. 2013); United States v. Baker, 432 F.3d 1189, 1233-34 (11th Cir. 2005) ("the government's failure to prove the amount or type charged in the indictment does not merit reversal."). The amount and quantity of drugs only matter for purposes of § 841(b), which "provides enhanced maximum sentences for persons convicted of violating §§ 841(a) or 846, depending on the quantity and type of drug involved." United States v. Sanders, 668 F.3d 1298, 1309 (llth Cir. 2012)(citing 21 U.S.C. § 841(b)).

In this case, Arbodela's plea agreement provided that he would enter a plea to the conspiracy count in the indictment, and in return, the agreed upon drug quantity was greater than 500 grams. This subjected him to the penalties prescribed in 21 U.S.C. § 841(b)(1)(B), rather then the greater statutory penalties that he would have faced based on the drug quantity alleged in the indictment[7]. Given that the indictment properly

_____

[7] Under § 841(b)(1)(B), a defendant -- like Arbodela – found, by

10

charged the offense of drug conspiracy, Arbodela's contention that the indictment contained a jurisdictional defect is without merit. Additionally, to the extent Arbodela contends that his counsel was ineffective for failing to seek the dismissal of the indictment on this ground, this contention is likewise without merit[8].

Arbodela's remaining claims involve alleged ineffective assistance of his trial counsel. In his second claim, Arbodela contends that his counsel was ineffective for failing to advise him that a guilty plea carried a risk of deportation. The standard for evaluating ineffective assistance claims was set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To succeed on such a claim, "the defendant must show that counsel's performance was deficient,

---

virtue of the plea agreement, to have distributed 500 grams or more of cocaine, after having been already convicted of a prior felony drug offense, was subject to a statutory penalty of 10 years to life imprisonment. § 841(b)(1)(B). Had Arbodela been convicted of the drug quantity alleged in the indictment, he would have faced a mandatory statutory penalty of 20 years to life based on his prior felony conviction.

[8] Although not directly addressed by the Government, it appears that Arbodela waived his right to attack any alleged errors with respect to the indictment by knowingly and voluntarily entering into the plea agreement. As noted, at the guilty plea hearing, Arbodela testified that he understood that he was waiving his right to file an appeal or collateral motion except if the sentence was in excess of the statutory maximum or if the sentence imposed constituted an upward departure or variance from the sentencing guidelines. (Doc. 139 at 12-13).

and that the deficient performance was prejudicial. Id., 466 U.S. at 687. The Supreme Court has held that the failure to inform a defendant whether a plea carries a risk of deportation amounts to constitutionally deficient performance. Padilla v. Kentucky, 559 U.S. 356, 374, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Where a claim of ineffective assistance involves a plea agreement, to show prejudice, the defendant must show "a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty, and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In so doing, a defendant must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 599 U.S. at 371; Gutierrez v. United States, 2014 U.S. App. LEXIS 5519, 2014 WL 1227482 (llth Cir. 2014).

Based on the record before the Court, the undersigned finds that Arbodela's claim must fail because he cannot establish the prejudice prong under Strickland. While Arbodela contends that his counsel failed to advise him that he faced deportation if he entered a guilty plea, the record reflects that at Arbodela's guilty plea hearing conducted on September 23, 2010, the Court expressly advised him that he would be subject to deportation if his plea was accepted and he was convicted. (Doc. 139 at 9).

Arbodela acknowledged, under oath, that he understood that a plea carried the risk of deportation, and he elected to proceed with the guilty plea. (Id.). In light of this clear record evidence that Arbodela was advised of the risk of deportation *before* entering the guilty plea, and that armed with this information, he elected to proceed with his guilty plea, Arbodela cannot establish that he was prejudiced by his counsel's failure to advise him that he faced deportation if he entered a guilty plea.

In his third claim, Arbodela, in reliance on Missouri v. Frye, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), asserts that his counsel "provided incompetent advise not to accept a plea offer. Defendant asserted under OATH he would have accepted Plea offer a substantial disparity existed between enhancement may be imposed with the sentence offered and the trial counsel did not provide a detailed credible Affidavit Explaining the plea offer [to] the court and Government and defendant...". (Doc. 115 at 23-24). Arbodela also references a "[p]lea offer of Conspiracy to Possess with intent to distribute cocaine 21 U.S.C. § 846 of the grams without enhancement." (Id., at 5). While not the model of clarity, it appears that Arbodela is arguing that his counsel "was ineffective because she advised

him to reject a *prior* plea offer that would have held him responsible for only 280 grams of cocaine without the possibility of enhancement. In <u>Frye</u> and <u>Lafler</u>, the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." <u>In re Perez</u>, 682 F.3d 930, 932 (11th Cir. 2012). The Supreme Court concluded that, in order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler</u>, 132 S. Ct. at 1385; <u>see</u> <u>Frye</u>, 132 S. Ct. at 1409.

In <u>Frye</u>, the Supreme Court held that it was ineffective assistance of counsel for defense counsel to fail to communicate a formal plea offer to the defendant. <u>Frye</u>, 132 S. Ct. at 1408. In <u>Lafler</u>, the Court held that it was ineffective assistance of counsel for trial defense counsel to advise the defendant to reject a plea offer and proceed to trial based upon a

misunderstanding of the law. Lafler, 132 S. Ct. at 1390-91.

In the instant case, Arbodela does not claim that his counsel failed to relay a plea offer to him. He is instead claiming that his counsel gave him bad advice, which caused him to reject a plea offer with more favorable terms, and enter into a later offer that was not as favorable. According to Arbodela, he would have pleaded to 280 gram and there would not have been an enhancement (presumably for his prior felony drug conviction). The problem with Arbodela's claim is that the record is completely devoid of any evidence of a prior plea agreement. Aside from Arbodela's vague and generalized assertion, he has not pointed to anything in the record which suggests, let alone demonstrates the existence of a prior plea offer with more favorable terms. The Government, on the other hand, has submitted the sworn affidavit of Arbodela's former counsel who avers that the only plea offer extended by the Government in this case is the one that was accepted by Arbodela and filed with the Court. (Doc. 143-1).

Further, the record reflects that less than two weeks after Arbodela was arraigned, the Government, on September 2, 2010, filed an Information which provided notification that Arbodela would be subject to the enhanced penalty provisions of 21 U.S.C. §§ 851 and 841(b)(1)(A), (B) and (C) due to his prior felony

drug conviction. (Doc. 25). There is absolutely nothing before the Court that suggests that the Government ever retreated from its position that Arbodela would be subject to an enhanced penalty, nor is there anything suggesting that the Court would have likely accepted a plea agreement that allowed Arbodela to avoid the penalty enhancement notwithstanding his prior felony conviction.

Also telling is the fact that while Arbodela now contends that his counsel gave him bad advice regarding an alleged prior plea offer, the record from his guilty plea hearing reflects that during the plea colloquy, Arbodela was specifically asked whether he was satisfied with his counsel's performance. (Doc. 139 at 6). Not only did Arbodela fail to mention anything about counsel's purported bad advice with respect to the purported prior plea offer, but he stated, under oath, that he was satisfied with his counsel's performance. (Id.). Because Arbodela has not made a plausible showing regarding the existence of a prior plea agreement, his claim should be denied.[9]

In his fourth claim, Arbodela argues that his counsel was ineffective with regard to his family's participation in a witness protection program. Although it is not entirely clear,

---

[9] To the extent Arbodela possesses evidence of a prior plea agreement, he should include it in an objection to the instant report and recommendation.

it appears that Arbodela is contending that his counsel failed to ensure that his family was placed in the witness protection program or that they remained in the program that was offered to them during the pendency of his case. As a preliminary matter, the undersigned notes that during the guilty plea hearing, Arbodela acknowledged that he has read the plea agreement and went over it with his counsel. He was also expressly questioned about whether anyone had promised him anything that was not contained in the plea agreement, and he testified under oath, that no one had promised him anything promises outside of the agreement. (Doc. 139 at 7-8). And, a searching review of the plea agreement does not contain any provisions dealing with a witness protection program. (Doc. 39-1). In addition, Arbodela has not cited and the Court is not aware of any case authority that places upon defense counsel an obligation to ensure that a defendant's family is placed in a witness protection program or is allowed to remain in such a program. Accordingly, Arbodela's claim that his counsel was ineffective for not assisting with his family's placement in a witness protection program is without merit and is due to be denied.

For the reasons detailed above, Arbodela's claims are due to be denied[10].

---

[10] In light of the undersigned's recommendation that Arbodela's

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional

---

motion be denied, his motions for disposition or final judgment (Docs. 124, 126, 128, 131) are **moot.**

claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Arbodela's claims would warrant the issuance of a Certificate of Appealability in this case. For the reasons discussed above, he has failed to establish his ineffective assistance of counsel claims, and has further failed to show that his indictment contained a jurisdictional defect. Under the circumstances, reasonable jurists could not debate whether any of his claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent,

and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## IV.   CONCLUSION

For the foregoing reasons, it is recommended that Arbodela's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 115) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Bladimir Riascos Arbodela. In addition, the undersigned Magistrate Judge is of the opinion that Arbodela is not entitled to issuance of a Certificate of Appealability, and is further not entitled to proceed *in forma pauperis* on appeal. It is so recommended.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh

Circuit precedent, "the failure to object limits the scope of []
appellate review to plain error review of the magistrate judge's
factual findings." Dupree v. Warden, Attorney General, State of
Alabama, 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be
specific, an objection must identify the specific finding or
recommendation to which objection is made, state the basis for
the objection, and specify the place in the Magistrate Judge's
report and recommendation where the disputed determination is
found. An objection that merely incorporates by reference or
refers to the briefing before the Magistrate Judge is not
specific.

       **DONE** this **7th** day of **August, 2014.**

                            **/s/ SONJA F. BIVINS**
                       **UNITED STATES MAGISTRATE JUDGE**